# DANIEL H. LYNN *vs.* STATE OF MARYLAND.

*Bastardy—Ex-Post Facto Law—Criminal Pleading—Dilatory Pleas—
Erroneous Sentence—Constitutional Law—Former Acquittal.*

Upon an indictment for bastardy, a plea stating that the Court is without jurisdiction is bad, because setting forth a conclusion of law without stating the facts out of which the defence arises.

And a plea that "there is no proper recognizance entered into by the traverser from the judgment of any justice of the peace, and upon which this indictment is based, and therefore the Court has no jurisdiction," is bad for the same reason, since the facts are not set forth to enable the Court to determine wherein the recognizance was not proper.

A plea showing that upon a former indictment the only question determined was one affecting the jurisdiction of the Court, which was determined in defendants' favor, is not a good plea of former acquittal.

A law that changes a punishment and inflicts a greater punishment than the law annexed to the crime when committed is an *ex-post facto* law.

Under Code, Art. 12, sec. 2, as it stood in January, 1894, a justice of the peace was authorized to cause the putative father of an illegitimate child to be arrested and give security to indemnify the County from charges which might arise from the maintenance of the child. In default of such security the father was committed to jail, but was discharged upon its being given. If no security was given he was liable to confinement in jail until the child was seven years old. By the Act of 1894, chap. 104, which took effect March 1st, 1894, and repealed and re-enacted Code, Art. 12, sec. 2, without any saving as to pending cases, it was provided that upon failure of the putative father to give security, the justice of the peace shall commit him to the custody of the sheriff for the period of twelve months, and upon an appeal to the Circuit Court he could be committed for not less than six nor more than twelve months. Defendant was indicted for having begotten an illegitimate child on January 27, 1894, which was born on October 27, 1894, and being found guilty on appeal to the Circuit Court, was committed to the custody of the sheriff for six months or until he shall enter into recognizance to indemnify the county, and the additional recognizance required by the Act of 1894, but not to remain in said custody longer than six months. *Held,*

1st. That under the Act of 1894, when the putative father fails to give security and is committed by the justice for twelve months, the justice may afterwards take the security, and the accused cannot be confined for the whole period unless there is a continuous failure during that time to give the security.

2nd. That in this case, assuming that the offence was committed when the child was begotten and not when it was born, there is nothing in the Act of 1894 which can be interpreted to impose any additional penalty, but it was for the benefit of the accused, and the Act is therefore not an *ex-post facto* law increasing the punishment of the offence of which the party was found guilty.

3rd. That the Act of 1894 is not unconstitutional because it provides that the father may be committed by a justice of the peace for twelve months, if he fails to give security, while, if his case is removed on appeal, he can be committed for not less than six nor more than twelve months.

4th. That the sentence in this case was not erroneous because it required the accused to enter into a recognizance to indemnify the county, and the " additional recognizance " required by the Act of 1894, since there is no additional recognizance required by that Act except the personal one already given as a condition of the appeal to the Circuit Court

In a criminal case, when the sentence imposed is not authorized by law, the Court of Appeals in reversing the judgment, is authorized by Code, Art. 5, sec. 78, to remand the record in order that a proper sentence may be pronounced.

Appeal from the Circuit Court for Carroll County, where the case was tried before ROBERTS, C. J., JONES and REVELL, JJ. The appellant was indicted for bastardy and upon the overruling of his demurrer to the indictment pleaded as follows :

"*First.*—That the Court has no jurisdiction in this cause.

And for a second plea, that there is no judgment of a justice of the peace upon which the indictment in this cause is based, and this Court is without jurisdiction.

And for a third plea, that there is no proper recognizance entered into by the traverser from the judgment of any justice of the peace, and upon which this indictment is based, and that therefore the Court has no jurisdiction to maintain this cause.

And for a fourth plea, that this traverser was arrested

upon an indictment found at the May term of the Circuit
Court for Carroll County, in the year 1895, by the Grand
Jurors of said county for bastardy, to-wit: For begetting a
certain male illegitimate child upon the body of Rosa B.
Haines, of said county of Carroll, as follows:

STATE OF MARYLAND, *Carroll County, to-wit:* The Grand
Jurors of the State of Maryland, for the body of Carroll
County, do on their oath present, that Daniel H. Lynn, late
of Carroll County, aforesaid, on the twenty-seventh day of
January, in the year eighteen hundred and ninety-four, at
Carroll County, aforesaid, in and upon the body of Rosa B.
Haines, of Carroll County, aforesaid, unlawfully did beget
a certain male illegitimate child, which said male illegitimate
child was afterwards, to-wit, on the twenty-seventh day of
October, in the year eighteen hundred and ninety-four, born
alive of the body of her, the said Rosa B. Haines, its mother,
and is still alive with her, the said Rosa B. Haines, at the
time of the taking of this inquisition, at the county aforesaid,
contrary to the form of the Act of Assembly in such case
made and provided, and against the peace, government and
dignity of the State.   CHARLES E. FINK, *The State's Attor-
ney for Carroll County.*

Which indictment is endorsed: "True bill.   J. OLIVER
WADLOW, *Foreman.*"

and upon which indictment and to which indictment he plead
as follows: Daniel H. Lynn, by Clabaugh & Roberts, his
attorneys, for a plea to the indictment in this cause, says:
1. That there was no valid judgment of any justice of the
peace of Carroll County, in and upon the premises, requir-
ing him, the said Daniel H. Lynn, to give security in the
sum of eighty dollars to indemnify the said Carroll County
from all charges that may arise for the maintenance of said
male child mentioned in said indictment.   2. And for a sec-
ond plea says, that there was no judgment entered against
the said Daniel H. Lynn, by any justice of the peace, in and
concerning any bastardy proceedings, wherefore the said
Circuit Court for Carroll County has no jurisdiction in the

premises. DANIEL H. LYNN. CLABAUGH & ROBERTS, *Attys. for Defendant.* 1895, June 10th, sworn to in open Court. BENJ. F. CROUSE, *Clerk.*
and that this said traverser was tried before the said Circuit Court for Carroll County, and the finding of said Court was for the traverser, and whereupon said traverser was discharged; and that said traverser alleges and avers that he, the said Daniel H. Lynn, is the same person who was indicted as aforesaid in the said last mentioned indictment, and that the said charge and offence in the said last mentioned indictment set out and the one charged in the indictment to which this plea is pleaded, are one and the same offence and not divers or different offences.

All of which the said traverser is willing to verify; whereupon he prays judgment and that by the Court here he may be dismissed, etc."

The jury found that the traverser did commit the offence as charged, and the judgment of the Court was that he pay the costs of the prosecution and enter into a recognizance in the sum of $80, with a surety or sureties, to indemnify Carroll County from any charge that may arise from the maintenance of the illegitimate child of Rosa B. Haines, and that he stand committed to the custody of the sheriff for the period of six months, or until he shall enter into said recognizance and the additional recognizance required by sec. 5 of Act 108 of 1894, provided he shall not remain in said custody longer than six months.

The case was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, BOYD and RUSSUM, JJ.

*James A. C. Bond* and *John M. Roberts* for the appellant.

The defendant objected to the indictment on the following constitutional grounds: That the Legislature of Maryland had, by Act 1894, ch. 108, repealed sections 2 and 5 of the Code, Art. 12, without a clause saving pending cases or past offences, and that said Act took effect on the *21st*

*day of March, 1894,* after the commission of the crime laid in the indictment, and had changed the punishment and inflicted a greater punishment than the law annexed to the crime when it was committed ; and that therefore, in relation to this offence, it was an *ex-post facto* one, unconstitutional and void.

The true meaning of the term *ex-post facto* law in the Constitution of the United States, is precisely and categorically determined in the case of *Calder* v. *Bull,* 3 Dall, 390, as follows : 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was when committed. 3rd. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence, in order to convict the offender ; all these and similar laws, are manifestly unjust and oppressive. This exposition has been uniformly adopted throughout the country, and nowhere adhered to closer than here in Maryland. *Anderson* v. *Baker,* 23 Md. 566–581 ; *Beard* v. *State,* 74 Md. 132. In *Fletcher* v. *Peck,* CHIEF JUSTICE MARSHALL defined an *ex-post facto* law as one " which renders an act punishable *in a manner* in which it was not punishable when committed."

We admit that in order to prohibit to the State, the enactment of a law of this character, it must appear from the Act itself, that the punishment prescribed by it *is greater* than that which existed under the law in force when the crime was committed ; as in this instance, than by the repealed section 2, Art. 12 of Code. Though the punishment be equal to or less than in the repealed law, it yet would be free from the objections we now urge. Whether it be one or the other, is readily ascertainable by putting the two sections in juxtaposition and reading them side by side. By

Act of 1894, chapter 108, sections 2 and 5 of Article 12 of
the Code of Public General Laws, entitled "Bastardy and
Fornication," is repealed and re-enacted with amendments.
Section 2 was as follows before being repealed: *"But if the
said person shall on oath discover the father of such child, the
justice shall discharge her, and shall cause to be arrested and
brought before him, such father if a resident of the county,
and shall cause him to give security in the sum of eighty dol-
lars, to indemnify the county from all charges that may arise
for the maintenance of such child."* The amended section,
Act 1894, now reads: *"But if the said person shall on oath
discover the father of such child, the justice shall discharge
her, and shall cause to be arrested and brought before him
such father, if a resident of the county, and shall cause him
to give security in the sum of eighty dollars ($80), to indem-
nify the county from all charges that may arise for the main-
tenance of such child; and upon the failure of such putative
father to enter into security, the justice shall commit him to
the custody of the sheriff of the county, for the period of twelve
months."* It took effect on the day of its passage and ap-
proval, *March 21st, 1894,* near two months after the act
done by traverser as charged. The alteration or addition
to the section brings into effect a law clearly aggravating
the crime and making the punishment greater than when
committed. Before the amendment the father upon being
discovered by the mother, as provided in the Code, sec. 2,
was required simply to give security in the sum of $80, to
indemnify the county from all charges that might arise for
the maintenance of such child and there it stopped. Fre-
quently he was unable *on the day when arrested and brought
before the justice,* to find such sureties, and then the justice
committed him to the sheriff of the county with the direc-
tion, *" him there safely keep until he shall give such security
or be otherwise lawfully delivered from thence."* "Form of
the commitment of the father," *Latrobe's Justice,* sec. 1009.
But as the law now stands amended, *" upon the failure of
such putative father to enter into security, the justice shall com-*

*mit him to the custody of the sheriff of the county for the period of twelve months."* Under the codified statute the putative father stood committed until he furnished the required security or was otherwise lawfully delivered from thence. At any time such security was forthcoming in an hour, a day, a week, a month or a year he could regain his freedom. Under this recent enactment, "upon the failure of the putative father to enter into security, the justice *shall commit him to the custody of the sheriff of the county for the period of twelve months."* What man, did he offend against the law of bastardy and fornication, would not prefer the punishment under the codified statute as against that of the Act of 1894 ? What jurist can fail to perceive in the latter the type of a higher denunciation than in the former ? To be condemned to *12 months' imprisonment,* no less, no more, as against possibly 11 months and 29 days, to the fraction of an hour, is strikingly to present the antithesis, and to test the severity of the latter statute. It is idle to press this point upon this learned Court. It was not taken below, nor did it enter into the reasoning of the majority Court below, in determining the question, although the dissenting Judge dwelt upon it, as influencing him in the grounds of his dissent. As far as we have gone with the argument, we have made it plain in the light of express authority, the precise meaning of an *ex-post facto* law; and have also determined what grade of punishment brings the law within the constitutional prohibition ; and we are thus enabled to take a correct view of the Act 1894, and determine its validity in respect to the constitutional principle invoked. And so tested by it, it appears the Act was passed subsequent to the offence, as we shall hereafter show, and that by it the punishment was increased and offence aggravated.

The next question to settle is: When did the traverser commit the crime? And what is the offence designed to be punished by the statute under which the indictment was framed?

The child was begotten on the *27th day of January,*

*1894*, as laid in the indictment, and definitely fixed by the
prosecuting witness in her testimony appearing in the bill of
exceptions, to which objection was made and overruled.
We contend, both on express authority and on reason,
that the offence designed to be punished by the " Bastardy
and Fornication" statute in question, is "*the fornication*,"
the "unlawful sexual intercourse" resulting in the birth
of a child. And if this be correct, it follows as night
does the day, that the act done by the traverser and
so charged against him was antecedent, by near two
months, to the passage of the law of 1894. If, however,
as the majority Court below thought, it required the birth
of the child *to consummate the crime*, which occurred on the
27th day of October, 1894, 7 months after the Act of
1894, then our contention is futile and falls to the ground.
But if there is any reliance to be placed upon what is called
" settled law " or what is known as " a question adjudicated
and determined," then this immediate question is put at
rest. This Court of Appeals of Maryland has spoken twice
to the precise question and each time with a clearness and
fullness that it is impossible to misunderstand. *Owens* v.
*The State*, 10 Md. 164 ; *Sheay* v. *State*, 74 Md. 56.

The bastardy law, as amended by the Act of 1894, is
discriminating as to classes and conditions, and permits the
justice of the peace in effect to imprison a citizen for the
period of 12 months *without trial*, and *simply upon the ex-
parte affidavit of an accuser.*

The Act of 1894 provides two different punishments for
the same offence. As where the person charged is unable
to indemnify the county, he is to be absolutely committed
to jail and imprisoned for the period of 12 months, *no more,
no less a time ; and unless he can enter into a recognizance to
prosecute an appeal, no appeal lies and he has no remedy.* If,
however, the accused is so fortunate as to be able to find
sureties and to give the recognizance, and on trial is con-
victed and fails to enter into a bond to indemnify, the Court
may imprison him for not less than *6 months* or not longer

than *12 months.* In the one case the punishment is fixed absolutely at *12 months,* but in the other a different penalty is provided for exactly the same thing.

*John Milton Reifsnider, State's Attorney for Carroll County,* and *D. W. Henning,* for the appellee.

As to the traverser's second point, the State contends that the alleged offence was committed *on the 27th day of October, 1894,* the date set out in the indictment as the time of the *birth of the said illegitimate child alive.* The law does not punish fornication as such (unless it partakes of the nature of public and offensive lewdness), but only imposes a penalty when the fornication results in the birth of a child alive. There is no offence until the child is born alive. Nor could the traverser, Lynn, have been indicted had the illegitimate child died prior to the time of the taking of the inquisition in this case. The prosecution must be commenced within a year from the *birth of* the child, and not from the *date of the unlawful sexual intercourse. Bake* v. *State,* 21 Md. 422 ; *Neff* v. *State,* 57 Md. 385.

But if it be true, as contended by the traverser, that the offence was committed on the 27th day of January, 1894, and prior to the passage of the Act of 1894; and that said Act of 1894 contained no saving clause for prior offences ; we respectfully submit that said section 2 and 5 of said Act of 1894 do not aggravate the offence set out in the indictment in this case, making it greater than when committed, nor do they inflict a greater punishment than was annexed to said offence when committed. An examination of the several bastardy Acts, from 1781 to the present time, discloses a plain intention on the part of the Legislature to mitigate hardships possible to be inflicted under this law where there is a refusal or inability to give the security required to indemnify the county or the recognizance directed to be given in case of appeal. Under section 1 of the Act of 1781, being section 2 of Article 12 of the Code, and which remained unchanged from 1781 to the Act of 1894,

a party convicted before a justice, upon failure or refusal to give the required indemnity, was committed to prison until he gave security to indemnify the county, irrespective of his *inability* to give the security required, and that too, *without the right to a trial by jury* unless he was fortunate enough to be able to enter into a recognizance as provided in section 2 of the Act of 1781. He might remain in custody only one day, it is true, if he then gave the security, but if unable to do so, he might also remain in custody for two years. ` By section 5, of chapter 108 of the Acts of 1894, the traverser is for the first time given the right of appeal from the judgment of the justice unless he enter into a recognizance (with sureties). This section permits him to appeal upon giving his personal recognizance (otherwise how would the case get before the Grand Jury if he was unable to give the additional recognizance), but he must remain in the custody of the sheriff, unless· he gives the "additional recognizance with good and sufficient sureties," as also required by said section 5.

It seems to us that chapter 108 of the Acts of 1894, construed in the light of previous legislation, leads to the conclusion, that under said Act of 1894, twelve months is the *extreme limit* for which a party convicted might remain in the custody of the sheriff under commitment from a justice of the peace, and not twelve months *at all events.* The judgment of the justice is, that he give the security as set out in section 2, of chapter 108, Act of 1894, and if ·he refuses, he is committed for twelve months for refusal to give the security adjudged to be given. Can it be successfully contended, that having been committed "in default" as it were, that immediately upon the traverser giving the security required by the judgment of the justice, that he would not be released from custody?. If such be not the result, then because of the *inability* of a party to give security at the moment of judgment by the justice, he would be punished by twelve months' imprisonment, when perhaps the next day friends would be ready and willing to aid

him in giving that which the judgment required of him. We do not think it possible that the bastardy law, as it now stands, means, or the Legislature intended, any such result. If we are wrong in our views, then the law is iniquitous in its effect and should be stricken from the statute books.

BOYD, J., delivered the opinion of the Court.

An indictment was found in the Circuit Court for Carroll County against the appellant, which charged that on the 27th day of January, 1894, he did beget, in and upon the body of Rosa B. Haines, a male illegitimate child, which was born on the 27th day of October, 1894. A demurrer was entered to the indictment, which was overruled, and the traverser then filed four pleas, the second of which was withdrawn and the others demurred to and the demurrer sustained.

Before considering the demurrer to the indictment and the first bill of exceptions, which practically presents the same question, we will briefly pass upon the action of the Court in reference to the pleas. That the first plea was insufficient is clear. It simply states a conclusion of law without stating the facts out of which the defence arises. The third plea was also defective for the same reason. It is not sufficient to state in a plea of this character that there is " no *proper* recognizance," etc., without setting it out, or stating sufficient facts to enable the Court to determine wherein it was not proper. " Every dilatory plea must be pleaded with strictness and be certain to every intent. * * * And it is consequently essential that the facts should be stated out of which the defence arises or a negation of the facts which are presumed from the existence of a record." *State* v. *Scarborough*, 55 Md. 349. The fourth plea was not pressed in this Court. It shows on its face that there is no issue raised as to the merits of the case under the prior indictment referred to in the plea, but only questions affecting the jurisdiction of the Court. The latter having been determined in his favor, and the Court therefore being with-

out jurisdiction to pass judgment on the merits of the case, it was not a good plea of former acquittal, which it was intended to be.

This brings us to the consideration of the principal and important question in the case, which was very thoroughly and ably argued by the attorneys on both sides. The indictment charges, and the evidence objected to by the traverser but admitted by the Court tends to sustain it, that the child was begotten in January, 1894, and was born on the 27th day of October of that year. The Legislature passed an Act which went into effect March 1st, 1894 (being chapter 108 of the Laws of 1894), which repealed and re-enacted sections 2 and 5 of Article 12 of the Code, without any saving clause for pending cases or past offences. It was contended on the part of the traverser that the Act of 1894 inflicted a greater punishment than did the law in force when the crime was committed, and was therefore an *ex-post facto* law, unconstitutional and void when attempted to be applied to this case. It must be conceded on the part of the State that if the premises of the traverser be correct, his conclusion must be admitted to be so. For without deeming it necessary to discuss at length what is meant by an *ex-post facto* law, it was held in *Calder* v. *Bull*, 3 Dall. 386, that "Every law that changes a punishment and inflicts a greater punishment than the law annexed to the crime when committed" was within the meaning of that term, and in *Fletcher* v. *Peck*, 6 Cranch, 138, CHIEF JUSTICE MARSHALL said that "an *ex-post facto* law is one which renders an act punishable in a manner in which it was not punishable when committed." See also *Anderson* v. *Baker*, 23 Md. 531, and *Beard* v. *State*, 74 Md. 132.

It is contended on the part of the traverser's counsel, that although under the terms of this statute a proceeding of this character cannot be instituted before the birth of the child, yet, as the act done by him is when the child is begotten, therefore it must be said that the crime for which he is indicted was committed at that time, and not at the

birth of the child. There is certainly great force in their argument in a case involving the question as to whether a law passed after the commission of an act can apply if it increases the punishment. A party is presumed to know what the law *is*, but not what it *will* or *may be* in the future. He is ordinarily liable to punishment according to the law as it is when he does a forbidden act, not " in a manner in which it was not punishable " at the time. But under our view of this case it is unnecessary to discuss that question. For the purposes of this case it may be conceded that the crime was committed when the child was begotten, and we will therefore consider the case with that assumption.

After providing for the arrest of the mother of an illegitimate child, and requiring her to enter into a recognizance on her refusal to disclose the name of the father, Article 12 of the Code of Public General Laws, by section 2, provides : " But if the said person shall on oath discover the father of such child, the justice shall discharge her and shall cause to be arrested and brought before him such father, if a resident of the county, and shall cause him to give security in the sum of eighty dollars to indemnify the county from all charges which may arise from the maintenance of such child." The Act of 1894 re-enacted that much of section two and then added, " *And upon failure of such putative father to enter into security the justice shall commit him to the custody of the sheriff of the county for the period of twelve months.*" It is contended that the Act of 1894 thus materially altered and added to the punishment, and that the father on his failure to enter into security must be imprisoned for twelve months, although he might be able to furnish bail the next day, week or month, after he was taken before the justice of the peace. If that construction of the law be correct, the penalty has undoubtedly been increased. Prior to the Act of 1894 he was committed to the jail in default of security, but upon it being given he was discharged. The form of the commitment adopted in this State in such cases directed the sheriff to "him thus safely keep *until he shall give such security* or be other-

wise lawfully delivered from thence." The original statute did not provide for any definite time for which he might be committed in default of giving security before a justice of the peace, but as section 7 of Article. 12 made the recognizance liable for $30 per annum until the child should reach seven years of age, it was the accepted and undoubtedly correct interpretation of the law that there was no lawful way of securing the release of the father, who continued thus in default, until after the expiration of the seven years. Therefore, if he was unable or failed to give security he was, as the law then stood, liable to be confined in the county jail for the period of seven years. It is perfectly apparent, then, that the object of the Legislature was to lessen the penalty and avoid such a severe and harsh punishment, as well as to relieve the county of the burden of supporting persons so charged for such length of time. Although the language of section 2, as amended by the Act of 1894, may by a strict construction be read to mean that the justice of the peace shall, upon the failure of the father to give security, then and there commit him for the period of twelve months, without any authority to afterwards take the security, it is manifest when we remember the evident object of the passage of the law, that such a construction is not in accordance with the legislative intent. It must be construed to mean that he is to be committed for the period of twelve months *unless he sooner give the security.* There must be a *continuous* failure to enter into security to authorize his confinement during the whole period. Whilst it is intended to punish the guilty party for fornication, another great object of the law is to indemnify the county, which would be wholly defeated by saying a justice of the peace could not afterwards take the security for that purpose, but must keep him in jail at the expense of the county.

Section 5 of Article 12, as it stood in the Code and as amended by the Act of 1894, shows conclusively the meaning of the Legislature. That section provides that if any putative father feeling aggrieved by the judgment of the

justice takes his case to the Court and be there found guilty, upon his neglect or refusal to give security " he shall be committed to the custody of the sheriff *until he comply ;* provided that such custody shall not continue longer than twelve months nor less than six months, in the discretion of the Court." The Legislature cannot be said to have intended to refuse the father the privilege of giving security before the justice after the day of the judgment by him, although he can do so in Court at any time during the term for which he was committed.

We see no difficulty about the provisions of section 5 of the Act of 1894. Prior to that Act the putative father could only have his case reviewed by entering into a recognizance with security, whilst now, if he feels aggrieved by the judgment of the justice, he can enter into a personal recognizance for his appearance at Court, and upon his doing so the Court is required to " take cognizance thereof," and he can then, on being indicted, have a trial by jury. But as in many cases, if that was all he was required to do, he would never appear but escape punishment, he is further required, to " entitle him to be discharged from the custody of the sheriff," to enter into additional recognizance with good and sufficient securities " to indemnify the *Court*," as the Act says, which of course means the *County*, as shown by the context and the provisions of sections 1 and 2. There is certainly nothing in this section of the Act of 1894 which can be interpreted to mean that any additional penalty has been imposed, but on the contrary it has been for the benefit of the party accused. If there ever was any question about the constitutionality of the bastardy law on the ground that it authorized the commitment of the accused by the justice without providing for a trial by jury, this Act has now removed the objection and he can now have his case reviewed without furnishing security, but must of course remain in confinement or give the required security until his case is heard and disposed of. But under the former laws that question was settled in this State. *State* v. *Glenn*, 54 Md. 604.

Nor do we see any constitutional objection to this Act, as contended by the appellant, on the ground that it provides two different punishments for the same offence—that is to say, the father must be committed for twelve months for the failure to give security before a justice of the peace, whilst if his case is reviewed by the Court and he is convicted he can be committed for not less than six nor more than twelve months. It is very probable that one reason for making the distinction is the one suggested in argument on the part of the State, that the parties in some counties may have to remain in jail for months awaiting trial, and hence the Court can take that fact into consideration and commit them for less than twelve months, but not less than six, but whether that be the correct reason or not they certainly cannot complain because the Court may reduce the time of their confinement from what the justice must give in case of their conviction.

As what we have said disposes of the question raised by the exception to the testimony in the bill of exceptions, the only remaining point urged by the appellant is that the sentence was erroneous because it required him to stand committed to the custody of the sheriff for the period of six months, or until he should enter into the recognizance to indemnify the county "and the additional recognizance required by section 5, Art. 108 of the Acts of 1894, provided he shall not remain in said custody longer than six months." Without meaning to decide that this question is properly before us on an appeal, it is apparent that the appellant is not prejudiced thereby, as there is no "additional recognizance" required by that section, except the personal one he must have entered into before he was entitled to have his case heard in Court. That was probably inadvertently added, but it imposes no additional burden on the appellant, for if he enter into the recognizance to indemnify the county no other is required by that section, and the order of Court expressly provides that on his failure to enter into recognizance he shall not remain in custody longer than six months.

We might add that if this were not so and the sentence exceeded that authorized by law, it would not entitle the appellant to be released. After the case of *McDonald* v. *State*, 45 Md. 90, cited by the appellant, was decided, the Legislature passed a law to meet the result of that decision, and it is now provided by section 78 of Article 5 of the Code that in case this Court reverses a judgment for error in the sentence, &c., it shall remand the record to the Court below in order that such Court may pronounce a proper judgment. But as we have already said, we do not think there was any reversible error in that addition to the judgment, as the appellant was not prejudiced thereby.

> *Judgment affirmed with costs to the appellee.*

(Decided June 17th, 1896).