## STATE *v.* EWELL

[No. 236, September Term, 1963.]

*Decided March 6, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Marvin H. Anderson, State's Attorney for Anne Arundel County,* and *Julian B. Stevens, Jr., Deputy State's Attorney,* on the brief, for the appellant.

*W. Harvey Beardmore* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

In this application by the State for leave to appeal from the granting of post conviction relief by Judge Duckett in the Circuit Court for Anne Arundel County, we granted leave to appeal and heard argument. The question posed is whether the trial court properly allowed credit to the appellee, against the period of confinement under his original sentence of five years, for the time spent in Crownsville State Hospital.

The facts disclosed by the record show that Ewell was convicted of statutory burglary on April 14, 1958, and given an indeterminate sentence not to exceed five years. On January 25, 1960, he was paroled. On March 10, 1960, he was again arrested and charged with statutory burglary. While awaiting trial in the Annapolis jail, he attempted suicide and was sent to Crownsville, a State hospital for the insane. He testified that he was sent there by Judge Michaelson, presumably under Code (1957), Art. 59, secs. 9 or 11. Cf. *Hazel v. State,* 226 Md. 254, 262. But the record does not show it, and it is possible that

he was committed upon the certificate of two physicians under Code (1957), Art. 59, sec. 1, or upon petition of the jailer under Code (1957), Art. 27, sec. 711. In any event the staff of Crownsville evidently considered him to be mentally deranged, for he remained there for 377 days.

On May 10, 1961, Ewell was discharged from Crownsville as recovered and able to stand trial. He was returned to the Annapolis jail. On May 12, 1961, he was tried and convicted by Judge Michaelson and sentenced to ten years in the House of Correction. The order did not specify when this sentence should begin, and the prison authorities correctly calculated that it should begin at the end of the original five year term. See Code (1957), Art. 41, sec. 125. Cf. *Burkett v. Warden,* 214 Md. 603, and *Justice v. Warden,* 203 Md. 651. But in arriving at the discharge date, the prison authorities added the 473 days during which Ewell was absent from the House of Correction on parole, although it clearly appears that for 377 days of the period he was confined in Crownsville. The Board of Parole and Probation held a hearing on July 28, 1961, and revoked the parole previously granted, without credit for the time spent outside the prison. When the matter was raised on petition for post conviction relief, Judge Duckett ruled as a matter of law that the petitioner was entitled to credit for the days spent in Crownsville and ordered and declared that the new sentence began on May 18, 1962, instead of on May 30, 1963.

Maryland Rule 764 provides that "[t]he court may correct an illegal sentence at any time." Code (1963 Supp.), Art. 27, sec. 645A authorizes a proceeding "to set aside or correct the sentence" if "the sentence exceeds the maximum authorized by law, or * * * is otherwise subject to collateral attack * * *." We think the proper legal construction of the sentences is open to review on post conviction. See *Burkett v. Warden, supra* (a habeas corpus case). This is not a case of modification or reduction of a sentence, but the question posed is simply one of statutory construction, as applied to virtually undisputed facts. The State argues that the trial court had no power to modify a revocation of parole because discretion is granted to the Board of Parole and Probation under Code (1957), Art. 41, sec. 115. It is true that the Board has discretion under that

section to allow or disallow credit for "the time spent in the community under parole supervision." Cf. *Chase v. Warden,* 216 Md. 627, and *Mayo v. Warden,* 231 Md. 635. But time spent in a mental institution can hardly fall into that category. We must look to other statutory provisions for a solution.

If the insanity or mental illness had developed while Ewell was confined in the House of Correction, and he had been removed to Crownsville from there, it is perfectly clear that his sentence would continue to run and not be suspended. Under Code (1957), Art. 27, sec. 700 (sec. 698 of the 1963 Supp.) "the prisoner shall be regarded during the time of such removal as remaining in custody of the penal institution to which he has been sentenced for the purpose of determining the time when he shall be released from such sentence." Code (1957), Art. 59, sec. 43, provides that removal of a convict to an asylum in the manner there prescribed does not suspend the running of the term. If Ewell had been sent to Crownsville as a "convict confined in any jail * * * [who] shall become insane or lunatic," under the procedure set out in Code (1957), Art. 27, sec. 711, it also appears that his removal to a "sanatorium, hospital or other place where he may receive care and treatment," would not suspend the running of the sentence. In *Eggleston v. State,* 209 Md. 504, we held that the statute dealing with defective delinquents did not allow similar credit for time spent in examination at Patuxent Institution but the Legislature promptly amended the statute to allow it. *Caparella v. State,* 214 Md. 355, 358.

We are not here concerned with the question whether a trial judge is or is not required to allow credit against a sentence for time spent in a mental institution pending trial. We have held that an accused is not entitled to credit as of right for time spent in jail, at least where the total does not exceed the statutory maximum, *Hands v. Warden,* 205 Md. 642, *Ramberg v. Warden,* 209 Md. 631, 633. Cf. *Eggleston v. State, supra,* and *Calp v. Warden,* 216 Md. 629, 631. The question here relates to the termination of the first sentence.

We think Judge Duckett was correct in holding that time spent in Crownsville should be credited against the first sentence. If the appellee had been arrested for violation of parole

and returned to the House of Correction instead of being held in the Annapolis jail, and had he displayed the same symptoms and been removed to Crownsville, it seems clear that he would have received credit. It would seem illogical that a different result should follow from the mere circumstance that he was removed while being held in one penal institution or another. As we have noted the Legislature has indicated that jails are to be treated in the same way as the other penal institutions, insofar as credit is concerned. Cf. *Baker v. State,* 205 Md. 42, 45. But see *Hopkins v. North,* 151 Md. 553.

Courts in other states have generally held that time spent under detention in a mental institution should be counted as a part of the sentence served. See *State ex rel. Siehl v. Jorgenson,* 224 N. W. 156 (Minn.) ; *In re Stearns' Petition,* 175 N. E. 2d 470 (Mass.) ; cf. *People ex rel. Molina v. Noble,* 216 N. Y. S. 2d 541; Note, 62 A.L.R. 246; 24B C.J.S. *Criminal Law,* § 1995 (4). There is a clear distinction between time spent in a mental institution and time spent at liberty, on parole, or in out-of-state penal institutions. *Calp v. Warden, supra.*

*Order affirmed, with costs.*