528 A.2d 904

**Charles ANDERSON**

v.

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE et al.**

No. 137, Sept. Term, 1985.

Court of Appeals of Maryland.

July 30, 1987.

**218**

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Susan Sugar Nathan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, and C. Frederick Ryland, Sp. Atty., Clifton T. Perkins Hosp., Jessup, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

---

* SMITH, J., and COUCH, J., now retired, participated in the hearing and conference of this case while active members of this Court; after

ELDRIDGE, Judge.

## I.

Charles Anderson, at the conclusion of his first degree murder trial, was found "not guilty by reason of insanity"[1] on April 8, 1981. The Criminal Court of Baltimore ordered him to the custody of the Department of Health and Mental Hygiene for an examination and evaluation to determine whether he should be confined in a mental hospital. In accordance with the recommendation of the Department, the court committed Anderson on April 21, 1981, to the Clifton T. Perkins Hospital Center.

Three years later, on October 11, 1984, Anderson applied to the Circuit Court for Baltimore City for an administrative release hearing, asserting that he "no longer meets the standards for commitment to a mental institution." The circuit court granted Anderson's request for an administrative release hearing but ruled "that defendant's administrative hearing shall be conducted under the standard of Maryland's new law on incompetency and criminal responsibility, effective July 1, 1984." Specifically, the portion of the new law which the circuit court held applicable provides that the individual seeking release should bear the burden of proof in the administrative proceeding. Previously, the State had borne this burden of proof. Anderson had argued that applying the new law to him would violate the constitutional prohibition against ex post facto laws, but the circuit court rejected the argument. Anderson appealed to the Court of Special Appeals which affirmed. *Anderson v.*

---

being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

1. In *Langworthy v. State,* 284 Md. 588, 599 n. 12, 399 A.2d 578 (1979), this Court pointed out that this terminology was "a holdover from common law concepts and prior statutory provisions regarding insanity and the commission of crimes" and did not properly refer to the trial court's finding that defendant was guilty of the crime charged but insane when he committed the crime. *See,* in addition, *Ford v. Ford,* 307 Md. 105, 113–118, 512 A.2d 389 (1986); *Pouncey v. State,* 297 Md. 264, 465 A.2d 475 (1983).

*Dep't of Health & Mental Hyg.,* 64 Md.App. 674, 498 A.2d 679 (1985). The appellate court held that the ex post facto prohibition was inapplicable because the purpose of Anderson's confinement "was solely for 'in-patient care or treatment' . . . [and] not a penal or punitive consequence" of the criminal act, 64 Md.App. at 693–694, 498 A.2d 679. Thereafter we issued a writ of certiorari to determine whether the application to Anderson of the new burden of proof provision would violate the prohibition against ex post facto laws.

## II.

The relevant statutory background is as follows. In 1982 the Governor created a "Task Force to Review the Defense of Insanity" in criminal cases. Enacted pursuant to the report of the Task Force, Chapter 501 of the Acts of 1984, effective July 1, 1984, altered certain aspects of the insanity defense laws.[2]

Prior to July 1, 1984, upon a plea of insanity and introduction of sufficient evidence to raise an issue as to the defendant's sanity, the State had the burden of proving, beyond a reasonable doubt, that the defendant was sane at the time of the criminal activity. *Bradford v. State,* 234 Md. 505, 200 A.2d 150 (1964). *See Trimble v. State,* 300 Md. 387, 394 n. 1, 478 A.2d 1143 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985); *State v. Pratt,* 284 Md. 516, 524, 398 A.2d 421 (1979); *State v. Evans,* 278 Md. 197, 209 n. 2, 362 A.2d 629 (1976); *Fowler v. State,* 237 Md. 508, 511–513, 206 A.2d 802 (1965).

Thereafter, if the State failed to prove sanity beyond a reasonable doubt and the trial court found the accused

---

2. The insanity defense laws in effect when Anderson committed the crime were set forth in Maryland Code (1957, 1979 Repl. Vol., 1980 Cum.Supp.), Art. 59, §§ 23 through 28. By Ch. 21 of the Acts of 1982 the General Assembly recodified these provisions into title 12 of the Health-General Article. Pursuant to Ch. 501, the laws relating to insanity as a defense in criminal cases are now contained in Code (1982, 1986 Cum.Supp.), §§ 12–101 through 12–121 of the Health-General Article.

guilty of the crime charged but insane at the time of the offense, Maryland Code (1982), § 12–110 of the Health-General Article, required the trial court immediately to

"[c]ommit the individual to the Department for an examination and evaluation to determine whether the individual:

(i) Is mentally retarded or has a mental disorder; and

(ii) Because of mental retardation or a mental disorder, would be a danger to the individual or the person or property of another, if released from confinement...."

This initial commitment was only for a limited time for the purpose of examination and evaluation. This was followed by a hearing at which the State was required to prove by clear and convincing evidence that the criminal defendant met the standards for indefinite commitment. *See* § 12–113(b) and (c) of the Health-General Article (1982); Comment to § 12–113 of the Health-General Article (1986 Cum. Supp.).

Once committed for an indefinite period, a defendant could periodically request to be released. He could choose either an administrative proceeding with judicial review, or a direct statutory judicial proceeding, or a habeas corpus proceeding. Section 12–114(c) authorized the direct judicial release proceeding, either with or without a jury, at which the criminal defendant had the burden of proving by a preponderance of the evidence his fitness for release. The habeas corpus proceeding was provided for in § 10–804. Section 12–114(b) authorized the administrative release hearing before the Department at which, prior to July 1, 1984, the State had the burden of proving by clear and convincing evidence that the criminal defendant should continue to be confined. *See Salinger v. Superintendent,* 206 Md. 623, 629–631, 112 A.2d 907 (1955); *Dorsey v. Solomon,* 604 F.2d 271, 273–275 (4th Cir.1979); *Daniels v. Superintendent,* 34 Md.App. 173, 366 A.2d 1064 (1976).

Ch. 501 of the Acts of 1984 abolished the rule that in the criminal trial the State had the burden of establishing the

defendant's sanity. Section 12–109 of the Health-General Article (1986 Cum.Supp.) now provides:

"(b) *Burden of Proof.*—The defendant has the burden to establish, by a preponderance of the evidence, the defense of not criminally responsible."

Chapter 501 also eliminated the initial commitment examination and hearing procedures; instead it contained an automatic commitment requirement. Section 12–111(a) provides that "after a verdict of not criminally responsible, the court immediately shall commit the defendant to the Department for institutional, inpatient care or treatment." This automatic commitment continues indefinitely until the criminal defendant prevails at an administrative proceeding or a judicial release hearing or obtains a writ of habeas corpus.

Lastly, Ch. 501 abolished the requirement that, in an administrative release hearing, the State has the burden of proving the necessity for the criminal defendant's continued commitment. Section 12–113(d) now places the burden of proof on the defendant to show by a preponderance of the evidence that he no longer meets the standards for commitment. Thus, under the new statute, the criminal defendant must prove his eligibility for release whether in a judicial proceeding or an administrative proceeding.[3]

Additionally, Ch. 501 contained a section expressly dealing with the applicability of its provisions to various situations where the criminal act occurred prior to Ch. 501's effective date of July 1, 1984. Section 4 of the statute stated, *inter alia,* that the new provisions would apply to a criminal defendant adjudicated insane "who is under commitment to the Department of Health and Mental Hygiene on or after the effective date of this Act...."

---

**3.** Chapter 501 made other amendments to the insanity defense laws which are not relevant to this case. *See, e.g.,* § 12–112(c) (inclusion of data in central computer on insanity committees to "prevent crime and protect the public"); § 12–121(b) (burden of proof now on individual when requesting changes in conditions of a conditional release).

## III.

In challenging the decisions of both courts below, Anderson relies solely on the ex post facto clauses of the federal and state constitutions. *See* Constitution of the United States, Art. I, § 10, cl. 1; Maryland Declaration of Rights, Art. 17. He contends that, because the burden of proof provisions for release were changed subsequent to his criminal activity, application of Ch. 501's new burden of proof provision to his administrative release hearing would operate to his disadvantage and, therefore, would violate the federal and state constitutional prohibitions against ex post facto laws. The State, while not disputing that the change in the burden of proof operates to Anderson's disadvantage, contends that the ex post facto prohibition is inapplicable because his confinement in a mental hospital does not constitute "punishment."

It has, of course, been settled since the Supreme Court's decision in *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798), that the federal ex post facto prohibition relates only to criminal or penal laws or the consequences of an offense. *See, e.g., Miller v. Florida,* — U.S. —, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *Weaver v. Graham,* 450 U.S. 24, 28–30, 101 S.Ct. 960, 964–965, 67 L.Ed.2d 17 (1981); *Corley v. Moore,* 236 Md. 241, 243, 203 A.2d 697 (1964); *Lynn v. State,* 84 Md. 67, 78, 35 A. 21 (1896); *Anderson v. Baker,* 23 Md. 531, 581–582, 605–606, 624–625 (1865); *Baugher v. Nelson,* 9 Gill. 299, 305 (1850). The same is true of the ex post facto clause in the Maryland Declaration of Rights, which has been viewed as having the same meaning as the federal prohibition. *See, e.g., Spielman v. State,* 298 Md. 602, 608–609, 471 A.2d 730 (1984); *Tichnell v. State,* 287 Md. 695, 735–736, 415 A.2d 830 (1980); *Elliott v. Elliott,* 38 Md. 357, 362 (1873); *Baugher v. Nelson, supra,* 9 Gill. at 306.[4]

---

4. It is noteworthy that the Maryland Declaration of Rights, in 1776, was the first bill of rights to contain a constitutional prohibition against ex post facto laws. H.H. Walker Lewis, *The Maryland Consti-*

While the ex post facto prohibition relates only to criminal offenses, the Supreme Court has enunciated the principle that the prohibition extends broadly to "any law passed after the commission of an offense which ... 'in relation to that offense, *or its consequences,* alters the situation of a party to his disadvantage.' " *Kring v. Missouri,* 107 U.S. 221, 235, 2 S.Ct. 443, 455, 27 L.Ed. 506 (1883), quoting Justice Washington in *United States v. Hall,* 2 Wash.C.C. 366, 26 Fed.Cas. 84, 86 (Case No. 15,285) (1809) (emphasis added). The Supreme Court has also pointed to "the liberal construction which this court ... [has given] to the words *ex post facto* law,—a construction in manifest accord with the purpose of the constitutional convention to protect the individual rights of life and liberty against hostile retrospective legislation." *Kring v. Missouri, supra,* 107 U.S. at 229, 2 S.Ct. at 450.

Under the pertinent provisions of Maryland law as construed by this Court in *Pouncey v. State,* 297 Md. 264, 465 A.2d 475 (1983), and *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979), it is clear that Anderson's confinement in a state mental institution is a direct consequence of adjudications at his criminal trial that he was guilty of committing a crime but insane at the time of the crime. *Langworthy v. State, supra,* 284 Md. at 594, 597–598, 399 A.2d 578. The commitment is not simply a consequence of the insanity finding, as "a person, whether sane or insane," may not be committed for an offense of which he has been acquitted. *Id.* at 593, 399 A.2d 578. In such event, the accused ... walks out of the courtroom a free man." *Id.* at 593–594, 399 A.2d 578. Instead, the commitment to the mental hospital is the "disposition" portion of the judgment in the

---

*tution—1776,* p. 45 (1976); Bernard Schwartz, *The Bill of Rights: A Documentary History,* p. 279 (N.Y.1971). The Maryland Constitution of 1776 was initially drafted in August of that year by a committee of seven men, one of whom was Samuel Chase. Lewis, *supra,* at p. 37; Schwartz, *supra,* at p. 279. Chase later became a justice of the Supreme Court of the United States, and was the author of the principal opinion in *Calder v. Bull, supra,* 3 Dall. at 386–395.

criminal case, which is "composed of the verdict that he committed the criminal act charged and the disposition of him, as a final judgment." *Id.* at 597, 399 A.2d 578. *See also* §§ 12–109 and 12–111 of the Health-General Article.

Moreover, the imposition upon the criminal defendant of the burden of proof in the administrative release proceeding, under § 12–113(d) of the Health-General Article as enacted by Ch. 501 of the Acts of 1984, is also a direct consequence of the judgment at the criminal trial that the defendant committed the criminal act but was insane. New § 12–113(d), imposing the burden of proof upon the person seeking administrative release, relates only to those who have been found guilty of committing the criminal act charged but insane. *See* § 12–109(c). Where an individual, because of an alleged mental disorder, has come into the custody of the Department of Health and Mental Hygiene through a different route than a judgment in a criminal case, the burden of proof at his administrative release hearing is upon the Department. *See* § 10–806 of the Health-General Article; COMAR 10.21.01.07 H and 10.21.-01.02 B (7).

Furthermore, the fact that a particular proceeding or matter is labelled "civil" rather than "criminal" does not necessarily remove it from the ambit of the ex post facto prohibition. *See, e.g., Burgess v. Salmon,* 97 U.S. (7 Otto) 381, 384–385, 24 L.Ed. 1104 (1878) ("the *ex post facto* effect of a law cannot be evaded by giving a civil form to that which is essentially criminal"); *Cummings v. The State of Missouri,* 4 Wall. 277, 325, 327–329, 18 L.Ed. 356 (1867). Similarly, a change in the law which is deemed "procedural" is not necessarily exempt from the ex post facto prohibition if the change affects substantial rights. *Kring v. Missouri, supra,* 107 U.S. at 232, 2 S.Ct. at 452 ("it is obvious that a law which is one of procedure may be obnoxious as an *ex post facto* law"). *See, e.g., Weaver v. Graham, supra,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12; *Thompson v. Utah,* 170 U.S. 343, 354–355, 18 S.Ct. 620, 624, 42 L.Ed. 1061 (1898). A change in the law which imposes the burden of

proof upon the individual has been held to be within the ex post facto prohibition. *See, e.g., Cummings v. The State of Missouri, supra,* 4 Wall. at 328; *United States v. Williams,* 475 F.2d 355 (D.C.Cir.1973).

On the other hand, not every law passed after the commission of an offense, which changes the consequences of that offense, is barred by the ex post facto prohibition. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Malloy v. South Carolina,* 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 (1915). At times, the Supreme Court has said that the change in consequences must be penal or punitive or must enhance the punishment for the ex post facto prohibition to be implicated. *See, e.g., Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952) ("that which it [the ex post facto prohibition] forbids is penal legislation which imposes or increases criminal punishment for conduct lawful previous to its enactment," and "[d]eportation, however severe its consequences," does not fall within the prohibition). More often, however, the Court has emphasized that the prohibition embraces consequences affecting substantial rights if they "disadvantage the offender" or are "more onerous." *Miller v. Florida, supra,* — U.S. at ——, 107 S.Ct. at 2452 (retroactive change in sentencing guidelines prohibited by ex post facto clause); *Weaver v. Graham, supra,* 450 U.S. at 29, 33, 101 S.Ct. 964, 966–967 (statute which "reduces the number of monthly gain-time credits available to an inmate who abides by prison rules" is "disadvantageous to petitioner and other similarly situated prisoners" and thus violates the ex post facto clause); *Lindsey v. Washington,* 301 U.S. 397, 401–402, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) ("We need not inquire whether this is technically an increase in the punishment annexed to the crime.... It is plainly to the substantial disadvantage of petitioners ...); *In re Medley,* 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890) ("any law which was passed after the commission of the offense ... is an *ex post facto* law, when it inflicts a greater punishment than the law annexed to the crime at

the time it was committed ... *or which alters the situation of the accused to his disadvantage ")* (emphasis supplied).

■ In the present case, the State, relying chiefly upon a series of decisions holding that the ex post facto prohibition does not preclude retroactive laws authorizing the deportation of aliens who have committed offenses,[5] argues that the ex post facto clauses are inapplicable to changes in the law relating to the "civil" consequences of a criminal act or the consequences of a criminal act which do not constitute "punishment." (State's brief, pp. 8–10). The State points out that the administrative release proceeding is "civil," and it contends that the purpose of Anderson's confinement is "clearly to provide treatment not punishment." (*Id.* at pp. 9–11). Nevertheless, as discussed above, Supreme Court opinions both before and after the deportation cases have suggested that the scope of the ex post facto prohibition is broader than that urged by the State.[6] These opinions indicate that a law passed after the commission of a criminal act, affecting substantial rights, and changing the consequences of having committed the criminal act in a way that is disadvantageous to the defendant, falls within the ex post facto prohibition.

Assuming, however, that the post trial consequence of the criminal act must constitute "punishment" for the ex post facto prohibition to be implicated, the concept of punishment is broader than a prison sentence or a fine. Recently this Court held that a change in the law, expanding

---

**5.** *Marcello v. Bonds,* 349 U.S. 302, 314, 75 S.Ct. 757, 764, 99 L.Ed. 1107 (1955); *Galvan v. Press,* 347 U.S. 522, 529–532, 74 S.Ct. 737, 742–743, 98 L.Ed. 911 (1954); *Harisiades v. Shaughnessy,* 342 U.S. 580, 593–596, 72 S.Ct. 512, 520–522, 96 L.Ed. 586 (1952).

**6.** It has been intimated that the Supreme Court's ex post facto opinions do not represent a model of consistency. *See, e.g.,* Lawrence H. Tribe, *American Constitutional Law* § 10–3 (1978); Van Tine, *Parole Guidelines As Ex Post Facto Laws,* 62 B.U.L.Rev. 515, 530–535 (1982). *See also United States v. Kowal,* 596 F.Supp. 375, 377 (D.Conn.1984).

Probably the broadest view of the ex post facto prohibition was set forth by Chief Justice Marshall in *Fletcher v. Peck,* 6 Cranch 87, 138, 3 L.Ed. 162 (1810).

the class of eligible recipients of restitution payments awarded in criminal cases, is covered by the ex post facto prohibition. *Spielman v. State, supra,* 298 Md. at 609–610, 471 A.2d 730. In *Spielman* we specifically rejected the State's contention that "the amended statute does not violate the prohibitions against *ex post facto* laws because restitution is not punishment," *id.* at 609, 471 A.2d 730.

It is true that the General Assembly does not deem commitment to a mental hospital, as a result of a criminal case, to be the imposition of "criminal responsibility." In addition, the purposes of the commitment are treatment and the protection of society against dangerous individuals. Nonetheless, these same considerations are included among the purposes for which convicted persons are sentenced to correctional institutions.[7] Also, as the Supreme Court pointed out in *Addington v. Texas,* 441 U.S. 418, 425–426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979):

> "This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. See, *e.g., Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Moreover, it is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual. Whether we label this phenomena 'stigma' or choose to call it something else is less important than that we recognize that it can occur and

---

7. The constitutional justification for committing the criminal defendant found to have been insane, without an initial hearing on his dangerousness, is the adjudication that he committed a criminal act. *See Jones v. United States,* 463 U.S. 354, 364, 103 S.Ct. 3043, 3049–3050, 77 L.Ed.2d 694 (1983) ("The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness").

that it can have a very significant impact on the individual."

*See also Breed v. Jones,* 421 U.S. 519, 530, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346 (1975) (" 'commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil," ' " quoting *In re Gault,* 387 U.S. 1, 50, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967)); *State v. Ewell,* 234 Md. 56, 198 A.2d 275 (1964) (time spent in mental institution should be credited against sentence).

Finally, in assessing the nature of a confinement like Anderson's to determine whether it may be deemed "punishment" for purposes of the ex post facto prohibition, it is pertinent to note that a criminal defendant committed to the custody of the Department of Health and Mental Hygiene, based upon the criminal case judgment that he was guilty of committing a criminal act but was insane at the time, is confined at the Clifton T. Perkins Hospital Center. This is a maximum security hospital; its purpose is to receive persons committed as a result of criminal prosecution or inmates from prisons who need psychiatric hospitalization. *See* Ch. 814 of the Acts of 1959; *Maryland Manual 1985–1986,* p. 210.

No case has been called to our attention involving the precise ex post facto issue presented here.[8] On a related issue, several cases have taken the position that a change in the law imposing the burden of proof upon the defendant, with regard to the insanity issue at the criminal trial itself, cannot be applied where the criminal act occurred before the change in the law. *See United States v. Williams, supra,* 475 F.2d at 356–357; *United States v. Prickett,* 604 F.Supp. 407, 410 (S.D.Ohio 1985); *United States v. Kowal,* 596 F.Supp. 375, 378 (D.Conn.1984); *People v. Hollins,* 136 Ill.App.3d 1, 90 Ill.Dec. 770, 482 N.E.2d 1053, 1055 n. 1

---

**8.** *See,* however, *People v. Juarez,* 184 Cal.App.3d 570, 229 Cal.Rptr. 145, 147–148 (1986), involving a different but perhaps analogous matter, and containing language arguably supporting the State's position in the instant case.

(1985).  *See also State v. Coconino Cty. Superior Ct.,* 139 Ariz. 422, 678 P.2d 1386, 1390–1391 (1984) (agreeing with the result of the previously cited cases which were deemed "persuasive," but resting the decision on nonconstitutional state law grounds).  Moreover, the federal Insanity Defense Reform Act of 1984, 18 U.S.C.A. §§ 4241–4247, *inter alia,* placed both the burden of proof on the insanity issue at the criminal trial and the burden of proof at a later administrative release hearing (18 U.S.C.A. § 4243(d)) upon the defendant, and "as a result of *ex post facto* considerations," the United States Department of Justice determined that "prosecutors should not seek to apply the new ... burden of proof provisions to conduct occurring prior to the date of enactment...."  U.S. Department of Justice, *Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress,* p. 65 (1984).

As previously pointed out, the sole reason advanced by the State and the Court of Special Appeals for the inapplicability of the ex post facto prohibition is that Anderson's confinement in the Clifton T. Perkins Hospital Center is not deemed "criminal" and is for the purposes of treatment and protection of society.  Considering the nature of that confinement under Maryland law, and particularly the fact that it represents the disposition portion of an adverse judgment in a criminal case (*Langworthy v. State, supra* ), we believe that the confinement does implicate the ex post facto prohibition.  Because the change in the law concededly operates to Anderson's disadvantage, it may not be applied to him under the ex post facto clauses of the federal and state constitutions.  Consequently, the State shall have the burden of proof, by clear and convincing evidence, at Anderson's administrative release hearing.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR*

BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. RESPONDENTS TO PAY COSTS.

MURPHY, C.J., and RODOWSKY J., dissent.

RODOWSKY, Judge, dissenting.

I respectfully dissent because I am in substantial agreement with the analysis presented by Judge Wilner for the Court of Special Appeals in *Anderson v. Department of Health & Mental Hygiene,* 64 Md.App. 674, 498 A.2d 679 (1985).

The majority of this Court believes that Anderson's confinement implicates ex post facto prohibitions based on "the nature of that confinement under Maryland law, and particularly the fact that it represents the disposition portion of an adverse judgment in a criminal case...." For the latter proposition, *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979) is cited. The majority relies on that portion of *Langworthy* which discussed whether an appeal would lie to review the verdict of guilty of the crime charged where the trier of fact had also found the accused to have been insane. The concern was whether there was a final judgment. In that context this Court said:

Despite the lack of a "sentence" in the context of punishment inflicted, the determination of the trial court as to the disposition of the defendant is as final a judgment following the conviction as if a sentence inflicting punishment had been imposed. The general rule that pronouncement of sentence or the suspension of its imposition is required to comprise an appealable judgment in a criminal cause does not apply because punishment is legislatively prohibited and supplanted by the statutory alternatives applicable upon the successful interposition of the defense of insanity. In circumstances such as here exist, the defendant may appeal from the judgment, composed of the verdict that he committed the criminal act charged and the disposition of him, as a final judgment in

the contemplation of the statutory authority for direct appeal. [*Id.* at 597, 399 A.2d at 583.]

This is simply a nuts-and-bolts, technical discussion of a jurisdictional-procedural issue, and not a characterization of the confinement.

More appropriate, in my view, to the nature of Anderson's confinement is the characterization found in that portion of *Langworthy* in which this Court rejects the notion that the verdict of insane meant that Langworthy was attempting, in effect, to appeal from an acquittal. We said:

> In short, *the clear legislative intent* regarding the successful interposition of a plea of insanity is not that an accused is to be found not guilty of the criminal act it was proved he committed, but *that he shall not be punished therefor.* Rather than be punished, he may go free or, under prescribed circumstances, be provided treatment for his mental disorder. [*Id.* at 598, 399 A.2d at 584 (emphasis added).]

The difference under the present statute from that involved in *Langworthy* is that under new § 12–111(a) "after a verdict of not criminally responsible, the court immediately shall commit the defendant to the Department for institutional, inpatient care or treatment." An administrative hearing must be held within fifty days after that commitment for the purpose of making recommendations to the court concerning eligibility for release. *See* Md.Code (1982, 1986 Cum.Supp.), § 12–114(a) of the Health-General Article. Whether we deal with a commitment for evaluation under the old statute or a commitment for a maximum of fifty days before an administrative hearing under the new statute, the disposition of the criminal case is "treatment for [the defendant's] mental disorder." *Langworthy, supra,* 284 Md. at 598, 399 A.2d at 584. In my opinion, the prohibitions against ex post facto laws are not implicated.

MURPHY, C.J., has authorized me to say that he joins in this dissenting opinion.