## RUTH ALMA CRANE

*vs.*

## J. EDWARD CRANE.

*Divorce: adultery; presumptions from circumstantial evidence; temporary alimony.*

In a suit for divorce, where it is conclusively proved that a wife travelled for days with the co-respondent as man and wife, occupying the same stateroom and then occupied the same bedroom at a hotel, registering there as husband and wife, the guilt of the wife is to be presumed and divorce should be granted.

p. 217

A wife is a privileged suitor; and in suits for divorce a destitute wife, who has been abandoned or who is living apart from her husband, may be allowed temporary alimony and the means of prosecuting or defending the suit, without any inquiry into the merits of the suit, and the jurisdiction of the trial court is not affected by the fact of the appeal having been taken.

p. 220

*Decided April 4th, 1916.*

Cross-appeals from the Circuit Court for Baltimore County. In Equity. (McLane, J.)

The facts are stated in the opinion of the Court

The causes were argued before Boyd, C. J., Briscoe, Burke, Pattison, Urner, Stockbridge and Constable, JJ.

*T. Scott Offutt* (with whom was *Harry B. Wolf* on the brief), for Ruth Alma Crane.

*David G. McIntosh* and *A. S. Niles* (with whom was *Richard Bernard* on the brief), for J. Edward Crane.

BRISCOE, J., delivered the opinion of the Court.

J. Edward Crane, the appellee, on the 30th day of January, 1915, filed a bill in the Circuit Court for Baltimore County, in equity, against Ruth Alma Crane, his wife, the appellant, for a divorce *a vinculo matrimonii,* on the ground of adultery, and for the care and custody of the two infant children.

By the third, fourth and fifth paragraphs of the bill it is averred:

3rd: That ever since the marriage the plaintiff has always been a kind, faithful and affectionate husband, and his conduct above reproach.

4th: That Ruth Alma Crane, his wife, the defendant, has at divers times, between January the 1st, 1914, and the filing of this bill, committed adultery with one Edgar H. Paxson, Jr., and with divers other men whose names are to the plaintiff unknown; and

5th: That the plaintiff has not lived or cohabited with his wife since he has discovered the adulteries.

On the 8th of February, 1915, the defendant answered the bill, denying the material allegations set out therein and charging that the averments in paragraph four of the bill were false and untrue, because her conduct towards her husband had always been kind, chaste and above reproach.

The case was heard upon bill, answer and proof, and from a decree dated the 9th of June, 1915, granting an absolute divorce to the husband, and the custody of the minor children, the wife has appealed.

Subsequently, on the 29th of October, 1915, the husband, J. Edward Crane, entered an appeal from the order of Court, dated October 1st, 1915, directing the payment of certain counsel fees, by the husband, and the cost of the preparation of the record, on the wife's appeal, to this Court, and alimony to the wife during the continuance of this litigation.

The controlling question on the first appeal, is whether the testimony, as disclosed by the record, sustains and sup-

ports, the charge of adultery, as alleged in the plaintiff's bill.

The rules of law to be applied in determining cases of this character have been repeatedly announced by the decisions of this Court and can admit of no controversy. They will be found clearly stated and adopted in a number of well considered cases; see *Kremelberg* v. *Kremelberg,* 52 Md. 553; *Shufeldt* v. *Shufeldt,* 86 Md. 529; *Rasch* v. *Rasch,* 105 Md. 504; *Robins* v. *Robins,* 121 Md. 695; *Marshall* v. *Marshall,* 122 Md. 694, and *Thiess* v. *Thiess,* 124 Md. 296.

The proof in the case at bar is voluminous and as usual in such cases, a large part of it is conflicting and contradictory, but we are compelled to hold, after a careful and deliberate consideration of all the testimony in the record before us, that the charge of adultery against the wife has been satisfactorily and conclusively established, and the husband is entitled to the relief sought by the bill.

It appears, that the parties to the controversy were married on December 19th, 1909, in Wilmington, Delaware, and lived together as husband and wife, until on or about the 19th of December, 1914. The issue of the marriage, are two children, Francis Earl, age three years, and Joseph Edward, age four years, both of whom are now living.

The bill charges adulterous intercourse between the defendant and the co-respondent, Edgar H. Paxson, Jr., between the first day of January, 1914, and the time of the filing of the bill.

The basis of the charge and the guilt of the defendant, rests upon the established fact, that she left Baltimore on December 10th, 1914, in company with the co-respondent Edgar H. Paxson, Jr., on the steamer Middlesex, running from Baltimore to Fredericksburg, Virginia, occupying the same state-room No. 2, known as the "bridal chamber," from Thursday until Saturday when they left the boat, and registered at the Princess Ann Hotel, as E. H. Hamilton and wife, Leesburg, Virginia, as appears from the hotel register of Saturday, December 12th, 1914. They were assigned to

the same bed-room, in the hotel, and passed as man and wife, both on the steamer and while at the hotel. .

If the testimony presented upon the part of the appellee supports the facts, as thus stated, it is impossible to reconcile it with the innocence of the defendant, and there can be no question as to the correctness of the conclusion reached by the Court below as to her guilt.

It will be seen, that the identification of the wife and Paxson, as the persons who occupied the state-room on the steamer for two days and nights under the names of E. H. Hamilton and wife, is positive and certain.

The stewardess and the waiter, Bundy, employed on the steamer, identified Mrs. Crane, at her house, and in the Court room, during the trial, as the woman who occupied the state-room with the man, who was registered on the boat, as E. H. Hamilton and wife.

Mr. Reamy, the manager of the hotel, in Fredericksburg, is positive and certain that the picture of Mrs. Crane, is the picture of the woman, who on December 12th, registered at the hotel as the wife of E. H. Hamilton, and they were assigned to room No. 307, of the hotel.

The witness Ashby, the clerk at the hotel testified that he is absolutely certain that the pictures of Mrs. Crane and Paxson, are the pictures of the persons who registered at the hotel on December 12th, 1914, as E. H. Hamilton and wife and they went to their room, as soon as he registered. He talked with Hamilton and they were supposed to be a bridal couple.

The signature of Paxson to a lease offered in evidence is not disputed and the handwriting thereon is the same as that on the registry of the steamboat company and the hotel register, at Fredericksburg.

The identification of the defendant and Paxson, as the persons who were on the steamer and at the hotel, in Fredericksburg, Va., on the occasions named, is not only conclusively established by the testimony of disinterested witnesses,

who testified in the case, but by other facts and circumstances contained in the record.

Besides this, the testimony of the husband, is strongly corroborated by that of the witness Rettberg, and by the testimony of his brother Francis J. Crane, who was present, at certain interviews between the husband and wife. The absence of the wife from home, on Thursday and returning on Saturday, was shown by the two domestics, Bessie Warfield and Stella Johnson, and by other evidence in the case.

The defense on the part of the wife, was an attempt to show, that she remained at home, upon the dates named, and the household consisted of her mother, the children, her mother's brother and herself. She testified that her husband was not at home and the servants were also absent from the house on the days she is alleged to have been on the steamer and at Fredericksburg, in company with Paxson, the co-respondent.

There is no real corroboration of her defense, except the testimony of her mother and uncle, and this is in direct conflict with her own admissions and the other testimony in the case.

The co-respondent Paxson, was not called as a witness and his absence in no way explained or accounted for. It is stated that he had lived about two years next door to the plaintiff at Catonsville, Md., but had disappeared and his whereabouts were unknown to the plaintiff.

The attempted corroboration of the theory of her defense by the "shoe exhibit," and the testimony of the witness Schier, as to her presence in Baltimore, on the 11th of December, 1914, is too uncertain and inconclusive, to be of any probative force, in the face of the convincing evidence opposed to it.

There is no sufficient evidence to sustain the counter-charge of infidelity or such cruelty of treatment on the part of the husband that would constitute a bar to the relief now prayed.

For the reasons stated we concur in the conclusion reached

by the learned Judge below, that the testimony in this case clearly leads to the conclusion of the guilt of the defendant and its decree of the 9th of June, 1915, will be affirmed.

The second appeal is from an order of Court, granting the wife's petition, for counsel fees, alimony pending her appeal to this Court, and for the costs to be taxed and charged for the preperation and printing of the record and the brief, on her appeal to this Court.

As the appellee has complied with the order in every respect, it would seem that the question here presented is practically an academic one, and of no avail.

The rule, as to the power and jurisdiction of the Court to allow counsel fees, costs and alimony to the wife, in cases of this kind, has been recognized by this Court.

In *Outlaw* v. *Outlaw* (appeal by the wife), 122 Md. 695, this Court said: "It is well established by the decisions of this Court, that the trial Court had jurisdiction to hear and pass upon the petition of the plaintiff in which she asked for counsel fees and costs incident to her appeal to this Court." See *Chappell* v. *Chappell*, 86 Md. 536; *Hayward* v. *Hayward*, 77 Md. XII; *Rohrback* v. *Rohrback*, 75 Md. 318, and *Buckner* v. *Buckner*, 118 Md. 265.

In *Chappell* v. *Chappell, supra*, it is said: "There can be no doubt whatever that a Court of Equity has power to allow alimony to a wife pending a suit for divorce; nor can its authority to require the husband to pay her counsel fees and the costs of the proceeding be disputed. These are not now open questions in Maryland. The amount allowed is regulated by the circumstances of each case and is usually said to rest in the Chancellor's sound discretion."

In *Rohrback* v. *Rohrback, supra*, JUDGE ROBINSON, in delivering the opinion of the Court, said: "And it is well settled that alimony may be allowed to the wife on application by her, after an appeal from an order or decree dismissing a bill in divorce proceedings. This was decided in *Jones* v. *Jones*, L. R., 2 Pro. & Div. 337. In that case, an application was made by the wife for alimony after an ap-

peal had been taken by her from an order dismissing her petition for a judicial separation; and MELLOR, J., said: 'As regards alimony under such circumstances as the present, so long as the wife continues a wife, there is no real reason why she should not have alimony, and it is due to her until on the petition there is a final decision against her.' And it is further said, the Court still had jurisdiction of the parties, and having jurisdiction, it had the power to determine the question as to the right of the wife to an allowance for counsel fees and costs."

In *Buckner* v. *Buckner, supra,* the cases in this and other jurisdictions are carefully reviewed, and it is said the rule announced in these cases has been uniformly followed in this State, and the fact that an appeal has been taken does not affect the power of the Court to make the allowance.

In *Coles* v. *Coles,* 2 Md. Chancery, 342, the Court said: "The general rule is clear and undisputed, that the wife, in these cases, is a privileged suitor, and that the Court, without inquiring into the merits, and whether she be plaintiff or defendant, will allow her alimony, *pendente lite,* and a sum for carrying on the suit. The rule is believed to be almost universal, to allow a destitute wife, who has been abandoned, or is living apart from her husband, temporary alimony, and the means of prosecuting or defending a suit for divorce, and this without any inquiry whatever, into the merits. Many of the cases establishing the rule, and explanatory of the reasons upon which it rests, were referred to in *Daiger* v. *Daiger,* recently decided by this Court."

This seems to be the undoubted practice in this State and in most of the States of this country; see 2 *Bishop on Marriage & Divorce,* sec. 392, and 2 *Nelson on Divorce & Separation,* sec. 860.

It follows, therefore, as the order on this appeal is free from objection it also be affirmed.

> *Orders on both appeals affirmed, the costs in this Court and in the Court below to be paid by J. Edward Crane.*