# CORLEY *v.* MOORE

[No. 441, September Term, 1963.]

*Decided October 13, 1964.*

242

The cause was argued before HENDERSON, C. J., and HAM-
MOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Earl E. Manges* for the appellant.

*Donald W. Mason, Deputy State's Attorney*, with whom was
*James S. Getty, State's Attorney for Allegany County* on the
brief, for the appellee.

HENDERSON, C. J., delivered the opinion of the Court.

This appeal is from a decree entered in a paternity proceed-
ing, in a case tried by the court without a jury, upon a finding
that the appellant was the father of a child born to the appellee,
a married woman, on October 27, 1962. This proceeding was
instituted on November 27, 1963, under the provisions of Chap-
ter 722, Acts of 1963, effective June 1, 1963. This Act was
proposed by the Commission to Study Problems of Illegiti-
macy, appointed pursuant to Joint Resolution No. 2 of the Gen-
eral Assembly of 1960, which made its final report to the Leg-
islative Council on December 6, 1961. The bill was not intro-
duced, however, until after a constitutional amendment to Art.
III, sec. 38, providing that a decree for the support of an il-
legitimate child or children should not constitute a debt, had
been ratified, as it was, on November 6, 1962. This new law
repealed Art. 12 of the Code, title "Bastardy and Fornication",
amended Art. 16, sec. 66, and added to the Code a new sub-
title "Paternity Proceedings", and secs. 66A to 66P. It also
amended Art. 26, sec. 53, relating to juvenile proceedings. One
effect of the new law was to eliminate the criminal aspect of
bastardy and to substitute a civil proceeding in equity for the
determination of paternity and the enforcement of decrees
passed in connection therewith.

In the instant case the appellant first raises the question whether the new law applies to the appellant, as the father of a child born prior to the effective date of the Act. We think there are intimations in the Statute that it does. Art. 16, sec. 66(e) provides that "the institution of proceedings under the former Article 12 of this Code, title 'Bastardy and Fornication,' prior to June 1, 1963, shall suspend the further running of the period of limitations provided for herein." That section begins by providing that proceedings shall be commenced during the pregnancy of the mother "or within two years after the birth of such child or children", (with exceptions not here relevant). Sec. 66N (a) provides: "Nothing contained in Section 66 of this Article or in this subtitle shall affect any proceeding or prosecution under said Section 66 or under the former Article 12 of this Code * * * instituted prior to June 1, 1963; any such proceedings or prosecution may be continued, including the enforcement or modification of any order theretofore passed in said proceeding, to the same extent and with the same effect as if said Article 12 had not been repealed." See also sec. 66N (c), providing for the enforcement of old decrees, "as if said case had been originally instituted under this subtitle."

We think these provisions contemplate that all proceedings instituted after June 1, 1963, should be under the new law, and may determine the paternity of any child born within the period of limitations. The suggestion that this would make the law an *ex post facto* one is without merit, since the new proceeding is not criminal, but civil. Cf. *Simmons v. Director,* 227 Md. 661, 663, and *Braverman v. Bar Ass'n,* 209 Md. 328, 348. See also *Peters v. Dist. of Col.,* 84 A. 2d 115 (Mun. Ct. of A., D.C.). That the Act was intended to be remedial is abundantly shown by the recitals in sec. 66A. Its purpose was not to punish the parents, but to enforce the "basic obligations and responsibilities of parenthood." It has long been established that the support of minor children, at least those born in wedlock, is not a debt but a duty. *McCabe v. McCabe,* 210 Md. 308, 314.

The appellant next contends that the court erred in permitting the appellee to explain why the name of her husband was

listed on the birth certificate as the infant's father. The certificate had been put in evidence without objection, and the appellant's counsel had brought out on cross-examination that she gave the information upon which the entry was made. Her explanation was: "I didn't know what to put on my child's birth certificate so I put my husband's name." We find no error. She had previously testified that the appellant was the father of the child, and the fact that she had made a prior inconsistent statement affected her credibility, but the trier of facts was entitled to consider her explanation as to why she made the statement. Cf. *Lee v. Dist. of Col.,* 117 A. 2d 922, 923 (D.C. Mun. App.), and *Tellez v. Canton R. R. Co.,* 212 Md. 423, 431.

Finally, the appellant contends that the court erred in refusing to grant a motion for directed verdict at the conclusion of the case. Mrs. Keplinger, the mother of the appellee, and Mrs. Gibson, sister of the appellee, both testified that the appellee and her husband separated in 1961 (they had been married in 1951) and that since the separation the appellee had lived with her parents continuously in Cumberland. The husband had moved to Hagerstown, and the only occasion on which Mrs. Keplinger had seen him was when he brought some toys to the children at Christmas in 1961 and immediately left. The appellee then testified that she had only seen her husband on the one occasion when he came to the house at Christmas; that she began to go out with the appellant on New Year's Eve, in January, 1962, and had intercourse with him repeatedly before and after she became pregnant; that he had offered to pay her doctor's bill but did not do so. She had no intercourse with anyone else. Mrs. Keplinger testified that the appellant came to their home on New Year's Eve, 1962, and that was "when they first started going together." The appellant did not take the stand or offer any testimony.

Under the old law, now repealed, neither the wife, the husband, nor the paramour was competent to testify as to nonaccess. See *Clark v. State,* 208 Md. 316, 321, et. seq., where Judge Hammond for the court in an able and exhaustive opinion traces the evolution of the so-called "Lord Mansfield rule". However, once nonaccess was established, the wife's testimony as to who was in fact the father was admissible. Even under the old law,

it is arguable that the testimony in the case at bar was sufficient, in the light of the *Clark* case, and the earlier case of *Hale v. State,* 175 Md. 319. See the article in 16 Md. L. Rev. 336. See also *Hall v. State,* 176 Md. 488, *Dayhoff v. State,* 206 Md. 25, and *Goodman v. State,* 236 Md. 257, just decided. We need not decide the point. Clearly, the rule is relaxed under the new law.

Art. 16, sec. 66F (b) provides that when the child's mother is married at the time of conception "the presumption that the child is the legitimate child of her husband may be rebutted by the testimony of persons other than the mother and her husband that, at the time the child was conceived, the mother was in fact living separate and apart from her husband, and it shall not be necessary to establish the nonaccess of the husband. After the court shall have determined that the child's mother and her husband were not living together as man and wife when the child was conceived, both the mother and her husband shall be competent to testify as to the nonaccess of the husband when the child was conceived or to any other matter." Sec. 66F (b) also changes the old rule as to the burden of proof beyond a reasonable doubt, to a preponderance of evidence. The wording is: "The burden is upon the petitioner or complainant to establish, by the weight of evidence required in other civil cases, that the defendant is the father of the child or children in question." It is provided that "both the mother and the putative father are competent to testify, but the defendant alleged to be the putative father shall not be compelled to give evidence * * *." Sec. 66F (d) also provides that "no comment or reference shall be made or permitted with respect to the defendant's failure to testify."

We find no requirement in the statute that proof of nonaccess must be clear and convincing, as the appellant contends. In this connection it may be noted that in the bill as introduced, the burden of proof was stated to be "to establish by evidence so clear, satisfactory and convincing as to raise in the mind of a reasonable and unprejudiced person a natural inference that the defendant is the father * * *." This was deleted in the passage of the bill, and the language quoted above was substituted. The only proof necessary is that the husband and wife

are living separate and apart; it is not necessary to establish nonaccess. Once the fact is established that they are living separate and apart, the wife can testify as to nonaccess, or any other relevant fact. The burden of proof throughout is the same that is applied in other civil cases, to establish the ultimate fact of paternity, in issue under the pleadings, by a fair preponderance of affirmative evidence.

We find that the evidence in the instant case supports the findings of the trial court.

*Decree affirmed, with costs.*