## LARMORE v. LARMORE

[No. 173, September Term, 1965.]

*Decided March 8, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Walter D. Webster* for the appellant.

Submitted on brief by *Vaughn E. Richardson* and *Patrick L. Rogan, Jr.,* for the appellee.

MARBURY, J., delivered the opinion of the Court.

Suit was instituted in the Circuit Court for Wicomico County by E. Hugh Larmore, appellee, against his son Larry H. Larmore and the latter's estranged wife, Betty Jean Larmore, on the common counts, including the count for money lent, to recover the sum of $10,000. The son filed no responsive pleadings to the suit but Betty Jean Larmore filed general issue pleas. A jury trial was held on April 21, 1965, and a verdict was returned in favor of the plaintiff for $10,000 against both defendants. On this appeal by Betty Jean Larmore from the judgment entered upon the verdict (the defendant Larry H. Larmore did not appeal), the only question which is argued in the appellant's brief is whether the evidence was sufficient to allow the jury to find that the transaction here involved constituted a loan of money from the plaintiff to the defendants.

At the trial, E. Hugh Larmore testified that in July of 1963 he was informed by his son and daughter-in-law, who were then living in a furnished apartment, that they wished to purchase a home in the Salisbury, Maryland, area. Knowing that they did not have the wherewithal to make the purchase, he suggested that they look for a house costing about $10,000. He accompanied the couple, at their request, in their search for such a house, and finally one on Cedar Drive, which was listed for sale at $10,500, was shown by a realtor and selected by them. After an offer of $10,000 had been accepted by the owners, the plaintiff testified that it was orally agreed between himself and the two defendants that he would loan them, without interest, the entire purchase price, that the house would be conveyed to his son and daughter-in-law, and that he would require no mortgage on the property to secure the loan or any other written evidence of indebtedness. Plaintiff Larmore testified that he did not wish the property to be encumbered by a mortgage to him because he knew that it would be necessary for the defendants to borrow money to buy furniture for the newly acquired house and that he, in fact, suggested that the defendants mortgage the house to finance the needed furnishings. Plaintiff further testified that: "It was distinctly understood Larry and Betty Jean would pay me back; start paying on the loan of ten thousand dollars—there was no doubt in

anybody's mind that it was a loan—after the mortgage (to secure the furniture purchase) was cleared up."

The senior Larmore, an accountant, who for twenty-seven years had been engaged in the business of aiding others in filing tax returns, was allowed to testify, over objection, that a federal gift tax return would be required to be filed if the $10,000 here involved had been a gift rather than a loan, but since he never considered it a gift, no such return was ever filed by him.

Defendant Larry H. Larmore, called as a witness for the plaintiff, generally corroborated his father's testimony as to the events which culminated in the purchase of the house. He testified that the $10,000 had been paid by his father to the realtor for the purchase of the house, that the property on the date of the settlement had been conveyed to him and his wife in their joint names, and that soon after the settlement the house had been mortgaged, pursuant to his father's suggestion, so as to secure a loan from a bank to buy the furniture for the house. Young Larmore testified that the understanding between the three parties had been that "when we got on our feet we would start paying him back in whatever amounts we could afford."

Betty Jean Larmore, who was not living with her husband at the time suit was filed or on the date of trial, testified that she understood that the $10,000 was a gift to her husband to enable him to purchase the house. She denied emphatically that she ever contractually obligated herself to make any payment, or that there was an understanding that the money was to be repaid. She further testified that her father-in-law had never made demand for repayment prior to the filing of suit.

It was uncontroverted that none of the $10,000 had been paid back as of the date of the trial.

At the conclusion of the plaintiff's case, as well as at the end of all the testimony, the defendant-appellant moved for a directed verdict in her favor claiming in substance that (a) the evidence failed to show that any debt ever existed between her and the plaintiff, and (b) that the evidence showed that the money alleged to have been paid by the plaintiff for her use was an irrevocable gift. The trial judge reserved ruling on the

motions but after the rendition of the verdict, over-ruled both motions.[1]

From the summary of the evidence set forth above it is obvious that the jurors were properly presented with a clear factual issue, *i.e.,* whether to believe the father and his defendant son, or to believe the appellant's version of the nature of the transfer of this money. The jurors chose to believe the plaintiff and the corroborative testimony of his son to the effect that the money was loaned to the defendants, and there was sufficient evidence justifying them in resolving the issues of fact in favor of the plaintiff. Appellant's basic complaint seems to be that the jury reached the "wrong" verdict and we are impliedly asked to re-examine the conflicting evidence and inferences deducible therefrom, and arrive at a different factual conclusion. Such is not the function of this Court.

In addition to the question of sufficiency of the evidence to prove a loan, the appellant propounds two additional questions: 1. "Did the court err in permitting the plaintiff to testify as to federal gift tax regulations?" and 2. "Did the court err in refusing to instruct the jury that their verdict was to be severable for the defendants?" Contrary to the provisions of Maryland Rule 831 c 4 the appellant's brief contains no argument in regard to these last two questions. Under the circumstances we conclude that the points suggested in these questions have been waived and do not require answers. *State Roads Comm. v.*

---

1. We can find no proof on the record before us that the loan for the purchase of the furniture, which was secured by the mortgage to the bank, had been "cleared up," or, as the son testified, that the defendants had financially "gotten on their feet," or that the $10,000 was for any other reason due. In an action for money lent, which was the plaintiff's theory on which this case was tried, it is essential to prove, if money is to be repaid after a certain event, that such an event has occurred and the money was not paid. See 1 Poe, *Pleading and Practice,* § 106. However, the appellant did not raise this question below as to whether, if this was a loan instead of a gift, the condition precedent had occurred. If the condition precedent had not occurred there could have been no breach of contract, express or implied, which would entitle the plaintiff to recover. This point, however, was not raised by the appellant on this appeal and even had it been raised we would not consider it since it was not raised below. Maryand Rule 885.

*Halle,* 228 Md. 24, 31, 178 A. 2d 319; *Comptroller v. Aerial Products,* 210 Md. 627, 644, 124 A. 2d 805. In *Halle* Judge Prescott, speaking for the Court, at page 32 said: "Surely it is not incumbent upon this Court, merely because a point is mentioned as being objectionable at some point in a party's brief, to scan the entire record and ascertain if there be any ground, or grounds, to sustain the objectionable feature suggested."

*Judgment affirmed, costs to be paid by the appellant.*