PAUL RAYMOND DOWNES *v.* JOYCE
LUCILLE KIDWELL

[No. 196, September Term, 1971.]

*Decided January 21, 1972.*

The cause was argued before ORTH, THOMPSON and MOYLAN, JJ.

*John T. Bell* and *M. Albert Figinski,* with whom were *Charles W. Bell, Frank S. Cornelius* and *Bell & Bell* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Thomas G. Young, Assistant Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Stephen R. Creyke, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

On December 2, 1970, Joyce Lucille Kidwell, through the State's Attorney's Office for Montgomery County, filed a petition for determination of paternity and support against Paul Raymond Downes. The petition alleged that the appellant was the father of a female child, Katrina Downes, born to complainant on February 27, 1961. On February 25, 1971, a jury trial was conducted by Judge Irving A. Levine. Appellant's motions for directed verdict were denied and the jury returned the verdict establishing Downes as the father of the child.[1] Downes appeals from the judgment rendered upon the verdict. He contends his motion for a directed verdict should have been granted because: (1) there was insufficient evidence to show non-access by the husband; and (2) the evidence showed the claim was barred by limitations. The appellant also contends the admission of his answer to a pretrial Interrogatory constituted reversible error.

Joyce Lucille Kidwell was married to William Miles on August 19, 1950. Joyce left Miles on May 20, 1960 and took up residence with appellant and his parents at

---

1. *Md. Code,* Art. 16, § 66F (d) directs "the trial before said jury, including instructions to the jury, motions for new trial, judgment N.O.V. and matters which may be considered on appeal shall proceed as far as practical in accordance with the statutes, rules and practice pertaining to . . . trial before juries in other civil cases. . . ."

the appellant's family home. Two hundred and eighty-two days later, on February 27, 1961, Katrina Downes was born. She testified that she began having sexual intercourse with Downes in April of 1960; she had her last menstrual period prior to Katrina's birth in May 1960; and she had intercourse exclusively with Downes between that time and Katrina's birth. Prior to this testimony Joyce's mother testified Joyce ceased living with her legal husband May 20, 1960.

Although Joyce was not divorced from William Miles until the summer of 1963, she and appellant moved into their own apartment in May of 1961, and held themselves out to be "Mr. & Mrs. Downes." On the 25th of November, 1965, a daughter, Kimberly, was born to the couple. Joyce and the appellant, lived together in a "husband and wife relationship" until Christmas Eve, 1967, at which time the appellant moved out of the household. Appellant took with him a bedroom suite, a color T.V., some pictures and Kimberly.

During the time that they lived together, Downes supported the family, including Katrina and Kimberly. After appellant left, he did not for some time directly contribute to the support of Joyce or Katrina. In July of 1968, he returned Kimberly to Joyce and began to contribute the sum of $25 per week "for the two children"; such payments continued until mid-November, 1968.

In October of 1969, when Kimberly, whose paternity is not disputed, was not yet of school age, Joyce telephoned the appellant. "I . . . told him I thought it was time he bought his child some clothes she needed for school . . . He called me back the next day and told me he would come and get her and take her shopping on Saturday, and he did.

"Q: Which child did he take?
"A: Katrina.

. . .

"Q: What, if anything, did Katrina have when she returned?

"A: She had some dresses and pajamas and underwear and a doll baby and some shoes and [he] also bought Kimberly approximately the same thing."

The incident referred to above was the only evidence of appellant's supplying direct support to Katrina since November of 1968. There was, however, evidence from which it could reasonably be inferred that appellant paid some household accounts and utility bills, but the dates were not established. There also was introduced a letter dated November 18, 1969, signed by appellant and addressed to a Dr. Richard M. Auld, it reads in part: "I am not responsible for bills incurred by my previous wife, Joyce Downes, for her or the children."

Mrs. Edna Downes, the mother of appellant, was asked:

"Q: Did your son ever have occasion to discuss with you the parentage or fatherhood of Katrina Downes?
"A: Yes, he is the father.
. . .
"Q: Did your son ever say to you that he was the father?
"A: Yes, he did."

Mrs. Marie Hayes knew "Mr. & Mrs. Downes" and socialized with them weekly over a period of 6 or 7 years, testified that Paul Downes was the "common-law husband" of Joyce Miles. When asked about appellant's relationship with Katrina, Mrs. Hayes answered, "Paul Downes was a very good and loving father."

*I Nonaccess by the Husband*

*Md. Code,* Art. 16 § 66F (b) provides in pertinent part as follows:

"[T]he presumption that the child is the legitimate child of her husband may be rebutted by the testimony of persons other than the

mother and her husband that, at the time the child was conceived, the mother was in fact living separate and apart from her husband, and it shall not be necessary to establish the nonaccess of the husband. After the court shall have determined that the child's mother and her husband were not living together as man and wife when the child was conceived, both the mother and her husband shall be competent to testify as to the nonaccess of the husband when the child was conceived or to any other relevant matter."

The appellee's mother testified that Mrs. Kidwell, the appellee, ceased living with her husband on May 20, 1960. Ignoring this testimony, the appellant alleges that her subsequent testimony failed to negative the possibility that the husband and wife lived together other than at the husband's house. To say the least, the appellant's reading of the testimony is strained and his argument is without merit. After the mother testified, Mrs. Kidwell testified she had sexual relations with no one other than appellant between her menstrual period in May of 1960 and the birth of the child in question on February 27, 1961. The testimony of these latter two witnesses, if believed by the jury, was sufficient under the statute to overcome the usual presumption that a husband is the father of his wife's children.

Appellant argues the proof the parties were living separate and apart in *Shelley v. Smith*, 249 Md. 619, 241 A. 2d 682, and *Corley v. Moore*, 236 Md. 241, 203 A. 2d 697, was stronger than in the instant case. Assuming this to be true we see nothing in the cases to suggest that the proof of estrangement in the instant case is not adequate. We hold it is sufficient to permit the introduction of the wife's testimony as to nonaccess by the husband.

## II  Limitations

The appellant further contends the evidence estab-

lished that the claim was barred by the statute of limitations. We do not agree.

*Md. Code,* Art. 16, § 66 (e) in pertinent part provides:

> "Proceedings to establish paternity . . . and to charge the putative father of an illegitimate child or children with their support and maintenance shall be commenced during the pregnancy of the mother thereof or within two (2) years after the birth of such child or children; except that if the putative father of such child or children has acknowledged in writing the paternity of the child or children or has made payment or otherwise provided for the support and maintenance of the child or children, it is sufficient if the proceedings are commenced within two (2) years of the date of such acknowledgment or the last such payment or provision. . . ."

To support his argument appellant relies on three cases from the State of New York and one from the State of Nevada.[2] The statutes of these states are similar to each other, but both are different from Maryland's. The New York statute is found in § 517 of the Family Court Act and provides as follows:

> *"Time for instituting proceedings.* (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been *acknowledged* by the father in writing or *by furnishing support."* (Italics added)

---

2. *Wong v. Beckford,* 28 A.D.2d 137, 283 N.Y.S.2d 491, 492 (1967). *Doe v. Roe,* 56 Misc. 2d 18, 287 N.Y.S.2d 905, 906 (1968). *Wales v. Gallan,* 306 N.Y.S.2d 614, 616 (1969). *Smith v. Gabrielli,* 395 P. 2d 325 (1964).

The Nevada statute is found in Nevada Revised Statutes § 126.340 and provides as follows:

> *"Limitation of actions.* Proceedings to enforce the obligation of the father shall not be brought after the lapse of more than 2 years from the birth of the child, unless paternity has been judicially established, or has been *acknowledged* by the father in writing or *by the furnishing of support."* (Italics added)

It is observed that the statutes of both New York and Nevada provide that furnishing of support within *the two year period* must be sufficient to constitute an acknowledgment of paternity. Under these statutes it is understandable that the courts in the cases cited above have found a single payment of money or a single instance of furnishing clothes insufficient to toll the running of the statutes. The Maryland statute has no such provision. The statute is tolled if the last contribution toward support and maintenance is within the two year period. The payment of any money for support or any material contribution is sufficient under the Maryland statute and we so hold. This is not to say that a single payment or furnishing of clothing for a child would be all the proof required to establish paternity. It is to say that where other proof, as in the instant case, sufficiently establishes paternity, the statute of limitations may be tolled by a single payment or by a single instance of furnishing support or maintenance. In the instant case the evidence was sufficient to support a rational inference that the appellant bought clothes for the child within the two year period. The other evidence was sufficient to show he was the father.

The Court of Appeals of Maryland apparently reached a similar result in *Goodman v. State,* 236 Md. 257, 203 A. 2d 695. Although the facts recited therein do not spell out that the holding was based on a single purchase of clothing for the child, our examination of the record extract indicates the only clear testimony as to material

or monetary contribution within the two year period was just such an instance. Whether the complete record would show otherwise we do not know. In any event, such a result seems sound under the Maryland statute; we therefore hold that the statute of limitations was tolled by the purchase of clothing for the child within the two year period prior to the institution of these proceedings.

### III  Self-Incrimination

The appellant argues the admission at the trial of his answer to a pretrial Interrogatory, in which he admitted he had had sexual intercourse with the appellee more than four years previously, constituted reversible error. In view of the overwhelming evidence that the parties had lived openly as man and wife for a period of several years, we fail to see how his answer could be other than harmless. We so hold. In passing, we will note that it seems one desiring to claim his statutory privilege not to give evidence under *Md. Code,* Art. 16, § 66F (b), should claim his privilege prior to answering an Interrogatory.

*Decree affirmed.*
*Appellant to pay costs.*