# GAIL M. RITTER *v.* CHARLES DANBURY

[No. 612, September Term, 1971.]

*Decided April 27, 1972.*

310

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Raymond G. Thieme, State's Attorney for Anne Arundel County* and *Joseph V. Reina, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellant.

No brief or appearance for appellee.

GILBERT, J., delivered the opinion of the Court.

Gail M. Ritter, appellant, has appealed from a dismissal of her paternity action brought against Charles Danbury, appellee.

This appeal presents two questions, viz.:

1. Did the trial court err in refusing to take judicial notice of the normal period of gestation?

2. Was the trial court in error in allowing appellee's then counsel to strike their appearance from the cause in contravention of Maryland Rule 125c 2?

The record reveals that the appellant, then age 17, met the appellee, then 16 years old, on Christmas Day, 1966, and after riding in his automobile and consuming a quantity of alcohol until she was "rather high," the couple engaged in sexual relations on the back seat of the automobile. Appellant acknowledged that she had previously had sexual relations with another male in October of 1966. Thereafter, she said, she had her usual menstrual periods through the first part of December, 1966. Appellant denied having her menses after her copulation with the appellee until the termination of her

pregnancy. She testified that she did not have sexual intercourse with any other person subsequent to the act with appellee on Christmas Day, 1966, or until well after the birth of her son in September, 1967. The testimony also revealed that the appellant has subsequently given birth to a second child, out of wedlock, sired by another person whose identity is not relevant to this case. The appellee did not testify, but answers to interrogatories filed in accordance with Maryland Rule 417 b reveal that he acknowledged having intercourse with the appellant at the time that she alleged.

Appellant readily admitted that following the birth of her son in September, 1967, and for a few months thereafter, she told other persons that the father of the child was the young man with whom she had had sexual relations in October, 1966. It was not until later that she claimed the appellee to be the father.

There was uncontradicted testimony that the appellant communicated via telephone with the appellee who was then attending college in Florida, relative to support for appellant's infant son, and that the appellant told members of the appellee's family that the appellee was in fact the father of her son. The testimony disclosed that on Christmas, 1968, the appellee gave a bicycle to the infant as a present.

Upon the conclusion of the appellant's testimony, the trial court granted the appellee's motion to dismiss the appellant's complaint on the basis that the court could not take judicial notice of the normal period of gestation.

Subsequent to the actual trial, but on the same day the trial had terminated (October 6, 1971), the appellee's attorneys filed a motion for leave to strike their appearance and attached to the motion the written consent of their client. The judge signed an order allowing the appellee's attorneys to strike their appearance. Thereafter, on the same day, 59 minutes after the judge had allowed the withdrawal of appellee's attorneys, the appellant filed her order for an appeal to this Court. Two days later,

appellant filed an answer to the motion for leave to strike appearance and simultaneously filed a motion to strike or rescind the order of court allowing appellee's attorneys to strike their appearance. The trial judge declined to reconsider the motion of counsel to strike their appearance because the appellant had filed an appeal and thereby divested the trial judge of jurisdiction.

Without regard to the question of judicial notice of the "normal period of gestation," we shall reverse the decree and remand the case for a new trial for the reasons stated in *Kimble v. Keefer,* 11 Md. App. 48, 272 A. 2d 668 (1971), wherein this Court, speaking through Chief Judge Murphy, said:

> "Paternity proceedings instituted under Maryland Code, Article 16, Section 66A, *et seq.,* are civil proceedings. *Corley v. Moore,* 236 Md. 241. The burden of proof is upon the petitioner —in this case the mother. She is required to establish, by a fair preponderance of the affirmative evidence, that the defendant is the father of the child. Code, Article 16, Section 66F (b) ; *Corley v. Moore, supra.* The mother's testimony standing alone may be sufficient to establish the necessary elements of the alleged father's paternity. Schlatkin, *Disputed Paternity Proceedings,* 4th Ed., p. 74. In the present case, the mother's testimony, if believed, would establish that her act of sexual intercourse with the appellant caused the onset of pregnancy and that the appellant to the exclusion of all others was the father of her child."

In so holding, we are not unmindful of *Harward v. Harward,* 173 Md. 339, 196 A. 318 (1938), wherein the Court of Appeals held that "neither the mean nor the extremes of the period of gestation in a woman" are so precise as to enable courts to take judicial notice of them. However, we believe that *Harward* is inapplicable here. *Harward* appears to turn upon a second factor not

present in the instant case, and that is the question of the husband's access. In the instant case, the testimony indicated that the appellant had sexual relations with the appellee on Christmas Day, 1966; that she had had no sexual relations thereafter until after the child was born; that she had had her normal menstrual periods in early November and early December, and, in effect, that the appellee was the father of her child to the exclusion of all others; the sum total of this cumulative testimony was, if believed, sufficient to establish that the appellee is the father of appellant's infant son born in September of 1967.

It is not the function of this Court to weigh evidence, nor the credibility of witnesses, *Szewczyk v. State,* 7 Md. App. 597, 256 A. 2d 713 (1969); *Presley v. State,* 6 Md. App. 419, 251 A. 2d 622 (1969); *Felder v. State,* 6 Md. App. 212, 250 A. 2d 666 (1969); Rule 1086, and we shall, therefore, vacate the order of dismissal and remand the matter to the trial court for the purpose of further proceedings not inconsistent with this opinion.

Turning to the second point raised by the appellant in her brief, we observe that the trial judge allowed appellee's counsel to strike their appearance immediately following the filing of their petition and consent thereto. Rule 125 c 2 provides:

> "* * * leave to withdraw shall be granted only by order of court. Except where leave to withdraw is granted in open court, *such order shall not be entered until five days after service of the motion pursuant to section b of this Rule.* The Court may refuse such leave if it would unduly delay the trial of the case, be prejudicial to any of the parties or otherwise not be in the interests of justice." (Emphasis supplied).

Paragraph b provides that except where a motion to withdraw or strike an appearance is made in open court in the presence of the other party or his attorney, that such motion shall be served upon the other party or his

314

attorney pursuant to Rule 306. Service was effected in the instant case in accordance with Rule 306. However, the trial court did not observe the time limitation set forth in Rule 125 c 2.

The Court of Appeals has stated in *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 270 A. 2d 476 (1970), that the rules of procedure are not guides to the practice of law but "precise rubrics * * * to be read and followed." See also *Brown v. Fraley,* 222 Md. 480, 161 A. 2d 128 (1960) ; *In Re Arnold,* 12 Md. App. 384, 278 A. 2d 658 (1971).

> *Decree reversed; order allowing appellee's counsel to strike appearance vacated, case remanded for a new trial.*
> *Costs to be paid by appellee.*