# MELINDA MARGARET STACK STALEY *v.*
# WILLIAM CRESSLER STALEY

[No. 225, September Term, 1974.]

*Decided March 12, 1975.*

100

The cause was argued before ORTH, C. J., and POWERS and DAVIDSON, JJ.

*Bill L. Yoho,* with whom were *Robert S. Hoyert, Gary Gasparovic* and *Hoyert & Yoho* on the brief, for appellant.

*George W. Shadoan,* with whom were *Ferdinand J. Mack* and *Shadoan & Mack* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 28 January 1974, in the Circuit Court for Montgomery County, Judge H. Ralph Miller entered a decree in which, insofar as here relevant, he awarded the appellant, Melinda Margaret Stack Staley (mother), an absolute divorce from the appellee, William Cressler Staley (husband, alleged father), on the ground of a voluntary separation. In this decree Judge Miller denied the mother's request for a permanent award of support for two children, Matthew Kale and Christopher Marc Staley, her twin sons whom she alleged were fathered by her husband. It is from that portion of the decree, which denied the paternity of the husband and his responsibility for child support, that the mother appeals.

The record shows that the parties were married on 6 July 1969 and lived together until 30 November 1971 at which time the husband left the marital home. Twin boys were born prematurely to the mother on 5 May 1973. The mother's gynecologist testified that the probable date of conception was 20 September 1972, that the probable period of conception would include the two weeks before or after the estimated date of conception, and that it was possible, albeit improbable, that conception occurred on 5 October 1972. The mother testified that on 5 October 1972 the husband visited her at her apartment and engaged in sexual relations with her. The husband asserted that he came to her apartment on that date, but only to pick up some furniture. He denied that he had intercourse with her. There was evidence to show that the mother was associating with another man (alleged paramour) under suspicious circumstances before, during and after the period of conception.

On appeal the mother contends that the chancellor erred in applying the provisions of Maryland Code (1973 Repl. Vol.) Art. 16, §§ 66A through 66P, and in particular, § 66F (b) rather than the common law "Lord Mansfield Rule" and in admitting allegedly immaterial evidence. She concludes that the decision of the lower court was unsupported by the

evidence and was clearly erroneous. Finally, she asserts that the lower court erred in not awarding her costs and attorney's fees for this appeal. We find all but the latter of these contentions to be without merit.

I

In 1777 in an ejectment case involving the question of the claimant's paternity, Lord Mansfield declared that:

> "[t]he law of England is clear that the declarations of a father or mother cannot be admitted to bastardize the issue born after marriage . . . . As to the time of the birth, the father and mother are the most proper witnesses to prove it. But it is a rule founded in decency, morality, and policy, that they shall not be permitted to say after marriage that they have had no connection, and therefore that the offspring is spurious . . . ."

*Goodright v. Moss*, 2 Cowp. 591, 592-94, 98 Eng. Rep. 1257, 1258 (1777). In Maryland, until 1 June 1963, the "Lord Mansfield Rule," derived from the English common law and named for its originator, was applied, regardless of the particular kind of case involved, whenever a question of the paternity of the child of a married woman arose. *See Clark v. State*, 208 Md. 316, 320-25, 118 A. 2d 365, 368-70 (1955) (bastardy proceeding); *Dayhoff v. State*, 206 Md. 25, 28-35, 109 A. 2d 760, 761-64 (1954) (criminal action for non-support of infant); *Hall v. State*, 176 Md. 488, 492-98, 5 A. 2d 916, 918-20 (1939) (bastardy proceeding); *Hale v. State*, 175 Md. 319, 321-23, 2 A. 2d 17, 18-20 (1938) (bastardy proceeding); *Harward v. Harward*, 173 Md. 339, 354-56, 196 A. 318, 325-26 (1938) (divorce on ground of wife's adultery); *Howell v. Howell*, 166 Md. 531, 539-42, 171 A. 869, 872-74 (1934) (divorce action with claim for child support); *Scanlon v. Walshe*, 81 Md. 118, 129-32, 31 A. 498, 499-500 (1895) (proceeding to determine heirs under a will). This evidentiary rule, as formulated in Maryland, created a presumption that the child of a married woman was the

legitimate issue of her husband, which presumption could be rebutted by clear and convincing testimony of a person other than the husband or mother, that the husband did not have intercourse with the mother at a time when conception of the child in question would have been possible. Once non-access was so shown, both the husband and mother could testify as to any other relevant facts, such as intercourse of the mother with another man and the identity of the father.

In 1963 the General Assembly enacted Art. 16, §§ 66A through 66P, *Paternity Proceedings*. Section 66F (b) of that statute modifies and relaxes the "Lord Mansfield Rule" by providing, in substance, that when a married woman brings a paternity proceeding against a man who is not her husband, the presumption that the child is the legitimate child of her husband can be rebutted by the testimony of persons other than the mother and her husband that the mother was living separate and apart from her husband at the time the child was conceived. Once the presumption is rebutted, both husband and mother may testify as to non-access as well as to any other relevant matters. Moreover, the mother's burden of proof is met if she establishes by a preponderance of the evidence that the man who is not her husband is the father of her child. *See Baker v. Lease*, 236 Md. 246, 247-48, 203 A. 2d 700, 700-01 (1964); *Corley v. Moore*, 236 Md. 241, 245, 203 A. 2d 697, 699-700 (1964).

The mother contends that this legislative modification of the "Lord Mansfield Rule" applies only when a married woman brings a paternity proceeding against a man other than her husband. She maintains that this modified rule should not apply when a married woman attempts to establish, in an equity proceeding seeking permanent child support from her husband, the paternity of her husband for children conceived at a time when the parties were married but living separate and apart.

In *Shelley v. Smith*, 249 Md. 619, 627, 630-31, 241 A. 2d 682, 686, 688 (1968), an equity case brought to establish the

right of a child to inherit from a man not married to his mother at the time of his conception and birth, the Court of Appeals said:

> "The case at bar is not, of course, the kind of paternity proceeding envisaged by Code, Art. 16, § 66F and the relaxation of the Lord Mansfield rule, as set forth in § 66F (b), at least at first blush, does not appear to be applicable to any but the special proceeding therein provided. If this is indeed the case then a quite undesirable anomaly presents itself; viz., the existence of two different rules governing the resolution of identical issues of paternity, the Lord Mansfield rule in cases like the one before us and the § 66F (b) rule in paternity proceedings under the statute. We think this should not be. It contravenes both good order and common sense."

> . . .

> "[T]he rules of evidence controlling the proof of paternity ought to be the same in either case. *Hall v. State, supra.* And there seems to be no reason why the rules emanating, in the first instance, from the governor's commission and, in large part, adopted later by the Legislature should not apply in the relatively few cases where paternity is in issue in connection with questions involving the right to inherit rather than the right to support and maintenance. We so hold. . . ."

The Court of Appeals held that the evidentiary rules codified in § 66F (b) should be applied to inheritance proceedings involving the question of paternity.

In *Altemus v. Altemus*, 18 Md. App. 273, 306 A. 2d 581 (1973), this Court interpreted *Shelley* as making the modified version of the "Lord Mansfield Rule" applicable whenever a question of paternity arose, unless the Legislature had provided by statute for the application of a

less strict rule for a particular kind of case. There, this Court said, at 18 Md. App. 281, 306 A. 2d 585:

> "What the Court did in *Shelley* was not so much to extend a specific statute beyond the limited application the Legislature gave it, but to modify what was then Maryland's version of the common law rule originally enunciated by Lord Mansfield, *by engrafting onto our common law the same rule of public policy which was opened up by the enactment of § 66F (b).*
>
> "While we have modernized the Maryland common law version of the Lord Mansfield Rule, this is not to say that the Legislature may not provide by statute for the application in a particular kind of case of a rule even less strict. This is true even though doing so may present an anomaly which contravenes both good order and common sense." (Emphasis added.) [1]

Thus we recognized that in *Shelley* the judicially created "Lord Mansfield Rule" had been judicially modified by the Court of Appeals to assure that uniform rules of evidence were applied, irrespective of the particular kind of case, whenever the question of paternity arose.

We find *Shelley, supra,* to be dispositive. The application of evidentiary rules set forth in § 66F (b) to equity actions for child support brought by a mother against a man who was her husband at the time of the conception of the child but who nonetheless denies paternity, permits uniform rules of evidence to control the proof of paternity, thereby assuring that a child's right to support does not depend upon whether the paternity issue is raised in a proceeding pursuant to Art. 16, § 66A through 66P or in some other kind of equity proceeding. The Legislature has not

---

1. In *Altemus* the modified version of the "Lord Mansfield Rule" was not applied to proceedings under the Uniform Reciprocal Enforcement of Support Act because that Act contained a less strict evidentiary rule. *Altemus, supra,* at 18 Md. App. 281-82, 306 A. 2d 585-86; Maryland Code (1957, 1969 Repl. Vol.), Art. 89C, § 21.

established a less strict test for such other equity proceedings. Accordingly, we hold that in an equity action for child support brought by a mother against a man who was her husband at the time of conception, the applicable rules of evidence governing the proof of paternity are those set forth in Art. 16, § 66F (b). The chancellor did not err in applying the evidentiary rules set forth in that section of the Code.

## II

The mother contends that the chancellor erred in admitting, over objection, the testimony of two detectives concerning her association with an alleged paramour, under suspicious circumstances, in February and March, 1973, a time when she was already some five or six months pregnant. Their observations, in the words of the chancellor, "would have been enough to support an allegation of adultery by the husband under the Maryland law."

In Maryland evidence tending to show that a mother engaged in sexual relations with men other than the alleged father, or associated with other men under suspicious circumstances at or about the time of conception is admissible on the question of paternity. *Twining v. State,* 234 Md. 97, 102, 198 A. 2d 291, 294 (1964); *Brennan v. State,* 151 Md. 265, 269, 134 A. 148, 149-50 (1926); *Seibert v. State,* 133 Md. 309, 313-14, 105 A. 161, 163 (1918); *Jones v. State,* 132 Md. 142, 146-47, 103 A. 459, 460 (1918). Such evidence, which "predicates an equal possibility of conception through someone else's act," 1 Wigmore, *Evidence,* § 133 at 564 (3d. ed. 1940), is material to the question of paternity because it tends to establish that someone other than the person alleged may be the father of the child. Evidence of a mother's association with a man other than the alleged father under suspicious circumstances at a time not within the period of conception is immaterial "except as bearing upon the nature of their relationship." *Seibert, supra,* at 133 Md. 314, 105 A. 163; 10 C.J.S. *Bastards,* § 85 at 174 (1938). If there is evidence of a relationship existing between the

mother and the other man during the period of conception, evidence concerning the nature of their relationship at other times would be material. The existence of an illicit relationship between them at such other times would tend to show that it was probable that the nature of their relationship during the period of conception was similarly illicit. Evidence of misconduct by a mother, prior to and/or after the period of conception with a man other than the alleged father, who had opportunities for sexual intimacy with her during the period of conception, is a material aid to the trier-of-facts in determining the probability of misconduct during the period of conception. Because such evidence tends to establish that a person other than the alleged father is, in fact, the father of the child, it is material and admissible. *See State v. Rook*, 519 P. 2d 252, 257 (Wash. App. 1974); *I. v. D.*, 158 A. 2d 716, 721 (N.J. Super. 1960); *Guy v. State*, 102 So. 243, 244 (Ala. App. 1924); 10 Am.Jur.2d, *Bastards*, § 116 at 927 (1963).

Here there was evidence to show that, although the mother and her husband were living separate and apart during the period of conception, the husband had visited the mother during that time. There was conflicting evidence on the question of whether intercourse then occurred between them. Thus, it was critical for the husband to show that during the period of conception the mother had engaged in sexual relations with another man.

One of the wife's neighbors, a flight engineer in the United States Air Force, testified that, during the period of conception, he went into his backyard with a telescope for the express purpose of spying on the mother's activities while in the alleged paramour's apartment. He stated that on three or four occasions, at about 10:30 or 11:00 p.m., he observed the mother and her alleged paramour sitting close together on a sofa and kissing just before the lights went out. He also testified that on some occasions he saw the alleged paramour, dressed "casually," leaving the mother's apartment at about 7:00 a.m., returning to his own apartment, and shortly thereafter leaving for work dressed in a business suit, shirt and tie.

The testimony presented by the private detectives about other acts of possible misconduct on the part of the mother and her alleged paramour subsequent to the period of conception related to the nature of their relationship and substantially increased the probability that their association during the period of conception did, in fact, involve illicit relations. Because these facts were material in showing that a person other than the husband might be the father of the twins, the testimony concerning them was admissible. We hold that, since there was evidence of a relationship between the mother and her alleged paramour during the period of conception, the chancellor did not err in admitting evidence of possible misconduct occurring between them at times subsequent to the period of conception.

### III

The mother contends that the chancellor erred in admitting, over objection, the testimony of her neighbor that in August, 1972, she stated that she was holding her alleged paramour responsible as the father of her twins. She points out that a pregnancy test on 6 September 1972 indicated that she was not then pregnant and, that other evidence showed that she did not conceive the twins until sometime around 20 September 1972. She maintains that the purported statement allegedly made in August 1972 had no relevance or materiality to the question of the paternity of the twins because it did not, and could not, constitute an admission that her husband did not father them.

It is the function of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Ritter v. Danbury*, 15 Md. App. 309, 313, 290 A. 2d 173, 175 (1972); *Kimble v. Keefer*, 11 Md. App. 48, 50, 272 A. 2d 668, 669 (1971); Maryland Rule 1086. A trial court may credit all or part of any witness's testimony. *See Basoff v. State*, 208 Md. 643, 654-55, 119 A. 2d 917, 923 (1956); *United Railways & Electric Co. v. State, for use of Lapka*, 163 Md. 313, 323-24, 163 A. 90, 93-94 (1932); 98 C.J.S. *Witnesses*, § 458 at 321 (1957).

Here the record shows that the neighbor testifying as to the statement lived in close proximity to the mother, not only at the alleged time the statement was made, but also until the time of trial. Thus, he had ample opportunity to hear the statement had it been made at a later date when, in fact, the mother was pregnant with the twins. Moreover, the mother's gynecologist, who determined on 1 November 1972 that the mother was pregnant with the twins, testified that on that date, or shortly thereafter, the mother told him that her husband was not the father of the children. Under these circumstances the chancellor was not clearly erroneous in crediting that portion of the witness's testimony concerning the making of such a statement and its contents, and in discrediting that portion of the testimony relating to the date upon which the statement was made. On this state of the facts the mother's statement constituted an admission that her alleged paramour was the father of the twins, and was relevant and material to the issue of paternity. The chancellor did not err in admitting the mother's statement.

## IV

The mother contends that the chancellor's determination that her husband was not the father of the twins was not supported by the evidence and was clearly erroneous. We do not agree.

Here the record shows that the parties were married at the time of the twins' conception. Thus, the presumption that the husband was the father of the twins arose. A person other than the mother and the husband testified, and the parties agreed, that they were living separate and apart during the period of conception. There was no evidence to the contrary. Therefore, the record supports the chancellor's finding that the presumption of legitimacy was overcome. Accordingly, both husband and wife became competent to testify as to the non-access of the husband or as to any other relevant matters. The mother then carried the burden of proving the husband's paternity by a preponderance of the evidence without the aid of the presumption.

In order to meet her burden of proving that the husband was the twins' father, the mother was required to show by a preponderance of the evidence:

(1) that she engaged in an act of sexual intercourse with the alleged father which caused the onset of pregnancy, and

(2) that he, to the exclusion of all others, was the father of her twins.

See Ritter, supra, at 15 Md. App. 312, 290 A. 2d 175; Kimble, supra, at 11 Md. App. 50, 272 A. 2d 669. There was conflicting evidence as to whether sexual intercourse transpired between the mother and her husband on 5 October 1972, a date at which conception was possible, though not probable, as well as conflicting evidence as to whether the mother engaged in illicit sexual relations with her alleged paramour during the period of conception. It is not the function of an appellate court to determine the comparative weight of conflicting evidence. If there is any competent, material evidence to support the factual findings below, we cannot hold those findings to be clearly erroneous. Davidson v. Katz, 254 Md. 69, 74-75, 79-80, 255 A. 2d 49, 52, 54-55 (1969); Larmore v. Larmore, 241 Md. 586, 589, 217 A. 2d 338, 340 (1966); Gosman v. Gosman, 19 Md. App. 66, 78, 309 A. 2d 34, 40 (1973), rev'd on other grounds, 271 Md. 514 (1974); Maryland Rule 1086.

Here there was ample evidence to show that during the period of conception the mother engaged in illicit sexual relations with a man other than her husband. This evidence, if believed, was more than sufficient to sustain the chancellor's finding that the mother had failed to carry her burden of proving by a preponderance of the evidence that the husband was the father of the twins. On the record before us we conclude that the chancellor was not clearly erroneous in finding that the husband was not the father of the twins.[2]

___

2. Cases, such as Ritter, supra, and Kimble, supra, which hold that a mother's testimony standing alone, if believed, is sufficient to establish

V

The mother finally contends that the chancellor erred in failing to grant her motion for costs and attorney's fees for the prosecution of her appeal. The motion was filed on 21 February 1974, the same day on which she noted her appeal to this Court from the order denying child support. On 13 May 1974 a memorandum, signed by the chancellor, was filed, which stated:

"There are no points or authorities to indicate this Court has any jurisdiction after the appeal has been noted. If no jurisdiction this motion must be presented to the Court of Appeals." [3]

No order granting or denying the motion was ever filed.

This Court will not ordinarily decide any point or question which was not tried and decided below. Maryland Rule 1085. Because we believe that a decision on the question of whether a trial court has jurisdiction to award counsel fees and costs for the prosecution of an appeal from an order denying child support payments once the appeal has been noted, is necessary and desirable for the guidance of the lower court, we shall decide this question even though it was not decided below. Maryland Rule 1085.

Maryland Code (1957, 1973 Repl. Vol.) Art. 16, § 5A provides:

"In all cases where a person makes an application for a decree or modification of a decree with respect to the custody, the amount of support or visitation rights concerning a child or children of the parties, or files any form of proceeding to recover

---

paternity, are inapposite to this case. Here the chancellor obviously failed to credit the mother's testimony that her relationship with another man during the period of conception was platonic and did not involve sexual intercourse.

3. The record shows that on 7 March 1974 the mother filed a document entitled "Points and Authorities." Notwithstanding the title of the document, it contained no citation of authorities to support her motion for appellate costs and attorney's fees in an appeal from the denial of child support.

> arrearages of child support or otherwise to enforce such decree, the court, after considering the financial status of both parties, their respective needs and whether there was substantial justification for instituting or defending the proceeding, may make such award of costs and counsel fees to either party as shall be just and proper under all the circumstances. (1967, ch. 488.)"

While this statute unequivocally establishes a person's right, under certain circumstances, to an award of costs and counsel fees for the prosecution of a trial in a child support proceeding, it does not specifically indicate whether a person under the same circumstances is entitled to such costs and fees on appeal and, if so, whether the trial court has jurisdiction to award such costs and fees after an appeal has been entered.

In *Rhoderick v. Rhoderick*, 257 Md. 354, 359-60, 263 A. 2d 512, 515 (1970), a mother, dissatisfied with the amount awarded in response to her petition for increased child support, filed an appeal to the Court of Appeals. Thereafter, and while the appeal was pending, she filed a petition pursuant to Art. 16, § 5A, in the Circuit Court for Baltimore County, seeking counsel fees and the allowance of costs for the prosecution of her appeal. Her petition was dismissed.

The Court of Appeals held that it was error for the trial court to dismiss her petition for costs and attorney's fees for prosecuting an appeal even though the appeal had been entered and was pending at the time of dismissal. The court determined as a matter of law that the appeal was substantially justified. The order dismissing the petition was reversed, and the case was remanded, insofar as here relevant, to permit the trial court to make a proper allowance for counsel fees for legal services in prosecuting the appeal. Thus, the Court of Appeals established that under Art. 16, § 5A, a person seeking child support payments is a privileged suitor; that she is entitled to counsel fees and court costs, not only for the trial, but also for the prosecution of her appeal; and that a trial court has

jurisdiction over the award of costs and counsel fees on appeal even after the appeal has been entered.[4]

We believe that *Rhoderick* is dispositive. Here the record shows that much probative evidence was presented by the mother to support her allegation that the husband was the father of the twins and was, therefore, responsible for their support.[5] Her effort to obtain financial assistance for them

---

4. An analagous result is reached under Maryland Code (1957, 1973 Repl. Vol.) Art. 16, § 5 (a), which provides:

"In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs."

Like Art. 16, § 5A, this provision, which establishes a wife's right, under certain circumstances, to an award of counsel fees for the prosecution of a trial in an alimony proceeding, does not specifically indicate whether under the same circumstances she is entitled to counsel fees on appeal and, if so, whether the trial court has jurisdiction to award such counsel fees after an appeal has been entered.

The Court of Appeals has long and consistently held that a wife living separate and apart from her husband is a privileged suitor when she seeks alimony, that as such she is entitled to counsel fees and costs for the prosecution of the trial, and that the husband should be required to pay counsel fees for services rendered his wife and her costs on an appeal concerning the matter of alimony when it appears that her income is insufficient to care for her needs and when her appeal was taken in good faith. Finally, the court has frequently reiterated that an application to order the husband to pay his wife's costs and counsel fees for the prosecution of her appeal should be acted upon by the chancellor even after the appeal has been entered, as such matters are within the jurisdiction of the trial court. Dougherty v. Dougherty, 187 Md. 21, 33-34, 48 A. 2d 451, 457-58 (1946); Timanus v. Timanus, 178 Md. 640, 644, 16 A. 2d 918, 920-21 (1940); Dicus v. Dicus, 131 Md. 87, 90, 101 A. 697, 698 (1917); Crane v. Crane, 128 Md. 214, 219-20, 97 A. 535, 536-37 (1916); Buckner v. Buckner, 118 Md. 263, 266-67, 84 A. 471, 473 (1912); Rohrback v. Rohrback, 75 Md. 317, 318-19, 23 A. 610, 611 (1892). The decision in *Rhoderick, supra,* establishes that, as a result of the State's interest in protecting the welfare of children, a person seeking support payments for a child is granted the same "privileged suitor" status traditionally accorded to a wife seeking alimony.

5. The mother presented in evidence photographs of the husband as an infant, of two of his children by a previous marriage, and of his sister's twins and younger son, all of which photographs revealed, according to the chancellor, markedly similar physical traits to those of the twins — blond hair, blue eyes and fair skin. In addition a blood test administered to the husband and the twins did not exclude the husband as the possible father. The mother denied that her relationship with the alleged paramour was illicit. Most importantly, the record shows that the husband had an opportunity for sexual intercourse with the mother during the period of conception. In sum, the chancellor acknowledged that the evidence in the case had left him "in a quandary." He concluded that the evidence was in "a state of equal balance." His determination that the husband was not the

from the man whom she alleged to be their father was made in good faith and undertaken in their best interests. We find as a matter of law that while the mother did not prevail upon the merits, she did have substantial justification for instituting this proceeding. *Rhoderick, supra,* at 257 Md. 360-62, 263 A. 2d 515-16; *Peterman v. Peterman,* 14 Md. App. 310, 316, 286 A. 2d 812, 816 (1972). We shall remand this case in order to permit the trial court to make a proper allowance for counsel fees for prosecuting this appeal. In order to arrive at an appropriate determination the trial court shall take further testimony in regard to the financial status of the parties, their respective needs, the amount of legal services rendered, and the reasonable value of such services.[6]

> *Order affirmed.*
>
> *Case remanded for further proceedings as to counsel fees in accordance with this opinion.*
>
> *Costs to be paid by appellee.*

---

father was predicated solely upon the mother's failure to carry her burden of proof.

**6.** The mother's motion to strike certain exhibits concerning her financial status, which the husband appended to his brief on appeal, is granted. The relative financial status of the parties, as set forth above, will be before the trial court on remand.